HERBERT F. CARLS, *ET AL.*, PLAINTIFFS-APPELLANTS, v.
THE CIVIL SERVICE COMMISSION OF THE STATE OF
NEW JERSEY, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued December 6, 1954—Decided January 10, 1955.

*Mr. James M. Davis, Jr.,* argued the cause for the appellants (*Messrs. Powell and Davis,* attorneys).

*Mr. John F. Crane,* Deputy Attorney-General, argued the cause for the respondents (*Mr. Grover C. Richman, Jr.,* Attorney-General of New Jersey, attorney).

The opinion of the court was delivered by

JACOBS, J.   The appellants were Principal Examiners in the Department of Banking and Insurance and were reclassified by the Civil Service Commission as Examiners II. They filed a petition seeking a declaration that the Commission's action was invalid but it was dismissed by the Appellate Division for the reasons expressed by Judge Eastwood in 31 *N. J. Super.* 39 (*App. Div.* 1954). Asserting deprivation of the constitutional protection afforded by *Art.* VII, § I, *par.* 2, they appealed to this court.   See *R. R.* 1:2–1(*a*). *Cf. Sorokach v. Trusewich,* 13 *N. J.* 363, 368 (1953) ; *State v. Pometti,* 12 *N. J.* 446, 450 (1953).

The appellants Carls, Del Negro, Siver and Ridgway had been Examiners and Senior Examiners in the Bureau of Banking of the Department of Banking and Insurance and

the appellants Andes, Connelly and Witbeck had held like positions in the Department's Bureau of Building and Loan. Thereafter they were promoted to the position designated as Principal Examiner. On February 19, 1952, following a recommendation of its technical staff, the Civil Service Commission eliminated the positions of Examiner, Senior Examiner and Principal Examiner and added the positions of Examiner I, Examiner II, Examiner III and Examiner IV. The appellants were assigned as Examiners II, and their civil service records were so noted on April 1, 1952. At the same time the Senior Examiners were also assigned as Examiners II, but no assignment was made to the position of Examiner I.

In June 1952 the appellants conferred with the Civil Service Commission and the Department of Banking and Insurance and complained about their reclassification; the appellants were duly heard and advanced the contention that the reclassification constituted a "demotion" and deprived them of "rights that had accrued to them." This contention was rejected and the reclassification was continued in full effect. On January 29, 1953 the appellants filed their petition in the Appellate Division. In dismissing the petition the Appellate Division held: (1) that the Commission's action should have been reviewed by appeal under *Rule* 3:81-8 (now *R. R.* 4:88-8) within the time permitted by *Rule* 1:2-5 (now *R. R.* 1:3-1), and (2) that in any event it was not improper and had not deprived the appellants of any of their substantial rights.

Our rules governing procedure in lieu of prerogative writs contain comprehensive provisions which are well designed to afford simple and expeditious modes of reviewing determinations by state administrative agencies such as the Civil Service Commission. Thus, *R. R.* 4:88-8 provides that review of the "final decision or action of any state administrative agency" shall be by direct appeal to the Appellate Division; under former practice, review of such decision or action would ordinarily be by *certiorari* or *mandamus* in the former Supreme Court. See *West Jersey & S. R. Co. v. Board of*

*Public Utility Com'rs,* 85 *N. J. L.* 468, 473 *(Sup. Ct.* 1914), affirmed 87 *N. J. L.* 170, 178 *(E. & A.* 1915). *R. R.* 1:3–1 now provides that such appeal shall be taken within 45 days of "the date of the service of the decision of the agency or of notice of the action taken, as the case may be." Similarly, *R. R.* 4:88–10 provides that "review of the validity of any administrative rule promulgated by any state administrative agency" shall be by direct petition to the Appellate Division for a declaratory judgment—under former practice, review of such rule would ordinarily be by *certiorari* in the former Supreme Court. See *Franklin Stores Co. v. Burnett,* 120 *N. J. L.* 596 *(Sup. Ct.* 1938). *R. R.* 4:88–15(*a*) now prescribes a general time limitation which is applicable to proceedings instituted under *R. R.* 4:88–10.

■ The Commission's action clearly fell within the broad orbit of *Rule* 3:81 (now *R. R.* 4:88) which prescribed the simplest and most effective available mode for its judicial review; accordingly, the Appellate Division rightly took the position that there was no justifiable occasion for invoking the terms of the Declaratory Judgments Act (*N. J. S.* 2*A*:16–50 *et seq.*). *Cf. Abbott v. Beth Israel Cemetery Ass'n of Woodbridge,* 13 *N. J.* 528, 543 (1953) ; *Abelson's, Inc., v. New Jersey State Board of Optometrists,* 5 *N. J.* 412, 417 (1950) ; *In re Stone's Estate,* 21 *N. J. Super.* 117, 127 (*Ch. Div.* 1952) ; *Weissbard v. Potter Drug & Chemical Corp.,* 6 *N. J. Super.* 451, 455 (*Ch. Div.* 1949), affirmed 4 *N. J.* 115 (1950) ; *Adams v. Atlantic City,* 26 *N. J. Misc.* 259, 261 *(Sup. Ct.* 1948) ; *Provident Mutual & Life Ins. Co. v. Unemployment Compensation Commission of New Jersey,* 126 *N. J. L.* 348, 351 (*E. & A.* 1941) ; *Empire Trust Co. v. Board of Commerce, etc.,* 124 *N. J. L.* 406, 409 (*Sup. Ct.* 1940). See *Borchard, Declaratory Judgments* 303 (*2d ed.* 1941) ; *Clapp, Making the Federal Rules a Part of New Jersey's Practice,* 16 *F. R. D.* 39, 66 (1954). And we incline to agree with the Appellate Division's view that the Commission's action was reviewable by appeal under *Rule* 3:81–8 (now *R. R.* 4:88–8) rather than by petition under *Rule* 3:81–10 (now *R. R.* 4:88–10). The former was de-

signed to deal with so-called *quasi*-judicial decisions or actions adjudicating the rights of particular individuals, whereas the latter was designed to deal with so-called *quasi*-legislative rules governing future conduct generally. See *Willapoint Oysters v. Ewing,* 174 *F.* 2d 676, 693 (9 *Cir.* 1949), *certiorari* denied, 338 *U. S.* 860, 70 *S. Ct.* 701, 94 *L. Ed.* 527 (1949). *Cf. Abbotts Dairies, Inc., v. Armstrong,* 14 *N. J.* 319, 331 (1954); *In re Port Murray Dairy Co.,* 6 *N. J.: Super.* 285, 293 (*App. Div.* 1950).

The Commission's action did not take the form of a rule and involved specific assignments of these particular appellants to the position of Examiner II. After the appellants' objections to the assignments were heard the Commission, presumably after due consideration, continued them in full effect. In the light of these circumstances review by appeal to the Appellate Division under *Rule* 3:81–8 would seem to have been indicated. However, refusal to determine the ultimate merits because the appellants mistakenly proceeded by petition for declaratory judgment under *Rule* 3:81–10 would be unjust and would do violence to the very purposes underlying our new judicial system. *Cf. Escoett v. Aldecress Country Club,* 16 *N. J.* 438, 451 (1954); *Schnitzer and Wildstein, New Jersey Rules Service,* AIV–12 (1954). The line between rule-making and adjudication is often shadowy. See *In re Port Murray Dairy Co., supra; Davis, Administrative Law,* 184–193 (1951); *Schwartz, The Administrative Procedure Act in Operation,* 29 *N. Y. U. L. Rev.* 1173, 1189 (1954). *Cf. Frank, A Conflict with Oblivion: Some Observations on the Founders of Legal Pragmatism,* 9 *Rutgers L. Rev.* 425, 437 (1954). And if the appellants had sought their review expeditiously the fact that they proceeded by petition rather than by appeal would have caused no harm and made little difference. However, they failed to proceed for over six months after the Commission had declined to alter their assignments and no explanation for the delay is advanced. Proceedings in lieu of prerogative writs generally involve issues of public nature and it is vital that they be determined with expedition. Fortu-

nately, the rules now contain comprehensive time limitations, although it must be noted that when the appellants filed their petition in January 1953 there was no limitation expressly applicable thereto—the pertinent limitation now found in *R. R.* 4:88–15(*a*) did not take effect until September 9, 1953. *Cf. Fischer v. Township of Bedminster,* 5 *N. J.* 534 (1950).

We come now to the meritorious question as to whether the Commission's action was improper and impaired any of the appellants' substantial rights. The Legislature has vested broad reclassification powers in the Commission (see *R. S.* 11:7–2; *R. S.* 11:7–5) and courts will not interfere with the discretionary exercise of these powers in the absence of an affirmative showing that it was arbitrary, capricious or unreasonable. See *Falcey v. Civil Service Commission,* 16 *N. J.* 117, 123 (1954); *Higgins v. Civil Service Commission,* 135 *N. J. L.* 238, 239 (*Sup. Ct.* 1947), affirmed .136 *N. J. L.* 636 (*E. & A.* 1948); *Rubright v. Civil Service Commission,* 137 *N. J. L.* 369, 373 (*Sup. Ct.* 1948). The appellants do not question the good faith of the reclassification but do contend that it resulted in their demotion and deprived them of their protection under the constitutional provision which guarantees that appointments and promotions in the civil service "shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive." *Art.* VII, § I, *par.* 2. The appellants were not demoted nor were their duties or salaries changed. Their titles were changed from Principal Examiners to Examiners II, but this seems to be a rather insignificant alteration which did not actually constitute any reduction in their real status. It is true, as they point out, that Senior Examiners who formerly held an inferior status were also classified with them as Examiners II. It may be assumed that this was done because they do the same kind of work and have the same responsibilities—the record suggests nothing to the contrary. The elevation of the Senior Examiners may perhaps be said to constitute promotions within the contemplation of the constitutional provision. However, they were all elevated at the same time

and no important purpose would then have been served by conducting a competitive examination amongst them; the Commission did not exceed its discretionary authority in acting without such examination. See *Falcey v. Civil Service Commission, supra.*

In any event, the appellants are in no just position to complain about the elevation of the Senior Examiners. Their contrary contention is based upon the view that the increase of the class in which they were placed will prejudice their opportunities when future promotional examinations are held. This ignores the fact that when the Commission holds promotional examinations it may open them to classes beyond the next lower class. See *R. S.* 11:10–7. Thus if there had been no reclassification the Commission could have permitted Senior Examiners as well as Principal Examiners to compete for the same superior position. This procedure would in nowise have impaired any of the appellants' substantial rights—similarly, the Commission's inclusion of the Senior Examiners in their class may not fairly be said to have impaired any of the appellants' substantial rights.

The appellants contend further that they have been prejudiced by the creation of the position of Examiner I between them and the Assistant Chief Examiner. We find no merit in this contention. It may be assumed that pursuant to the statutory authority (*R. S.* 11:7–2; *R. S.* 11:7–5) the position of Examiner I was created in the public interest to increase the efficiency of the Department's operations. The appellants have not introduced anything into the record suggesting the contrary nor have they intimated any political or other improper motives. The position has not yet been filled and the appellants will have fair opportunity to compete for it. Although they have pointed out that the position of Examiner I in the Corporation Tax Department has been filled, we fail to see how that bears on the matter before us. Unlike the Department of Banking and Insurance, the Corporation Tax Department had but one Principal Examiner and he was assigned to the position of Examiner I. We know none of the other pertinent circumstances and are not at

liberty to assume that this action was improper. See *Falcey v. Civil Service Commission, supra.* In any event, it does not affect the appellants or give them any basis for complaint in the present proceeding.

The appellants had no vested rights in their former classification and were at all times subject to the broad reclassification powers which have been delegated by the Legislature to the Commission in the interests of sound governmental administration. The incidental disarrangements which result from *bona fide* reclassification must readily be subordinated to the greater public good; where the Commission reasonably exercises its statutory reclassification powers, courts should be careful not to interfere lest they usurp functions entrusted to other branches of government. The Constitution appropriately expresses the broad principles designed to obtain effective public performance through civil service personnel chosen on the basis of merit rather than politics but it leaves the actual machinery for their effectuation in the hands of the legislative and executive. We find nothing in the record to indicate that the operation of that machinery in the instant matter has in anywise infringed the constitutional principles.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.