122 N.J. Super. 30 (1972)
298 A.2d 705
HYMAN S. ABRAMSON ET AL., APPELLANTS,
v.
JOHN J. FARRELL, CHIEF EXAMINER AND SECRETARY, DEPARTMENT OF CIVIL SERVICE, STATE OF NEW JERSEY, RESPONDENT. ROBERT J. BERISH ET AL., APPELLANTS,
v.
JOHN J. FARRELL, CHIEF EXAMINER AND SECRETARY, DEPARTMENT OF CIVIL SERVICE, STATE OF NEW JERSEY, RESPONDENT. IN THE MATTER OF THE PROFESSIONAL ASSOCIATION, NEW JERSEY STATE DEPARTMENT OF EDUCATION, A NEW JERSEY CORPORATION, REPRESENTING CERTAIN PROFESSIONAL EMPLOYEES IN THE DEPARTMENT OF EDUCATION  HAY APPEAL. ROBERT MICAI, WILLIAM BROWN, ORVILLE ABBOTT, GEORGE HUTCHINSON, JOSEPH R. SMITH, JOHN SHANER, AND HENRY JUSTUS, APPELLANTS,
v.
NEW JERSEY CIVIL SERVICE COMMISSION, RESPONDENT. NICHOLAS C. MAIDA, APPELLANT,
v.
CIVIL SERVICE COMMISSION OF THE DEPARTMENT OF CIVIL SERVICE, RESPONDENT. IN THE MATTER OF STATE COLLEGE LIBRARIANS, I AND II, 10 MONTHS AND 12 MONTHS  HAY APPEAL. IN THE MATTER OF THE DISTRICT INHERITANCE TAX SUPERVISORS, HAY REPORT APPEALS. IN THE MATTER OF SENIOR APPEALS EXAMINERS, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, HAY REPORT APPEAL.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 1972.
Decided December 12, 1972.
*33 Before Judges GAULKIN, LORA and ALLCORN.
Mr. William S. Greenberg argued the causes for appellants Abramson et al.; Berish et al.; Professional Association, New Jersey State Department Of Education, and State College Librarians (Messrs. Sterns and Greenberg, attorneys; Mr. William S. Greenberg, of counsel and on the brief).
Mr. Robert J. Partlow argued the cause for appellants Robert Micai et al. (Messrs. Parker, McCay & Criscuolo, attorneys).
Mr. Mario H. Volpe argued the cause for appellant Nicholas C. Maida.
Mr. Ernest Gross argued the cause for appellants District Inheritance Tax Supervisors (Messrs. Gross, Weissberger & Linett, attorneys).
Mr. William J. Walsh argued the cause for appellants Senior Appeals Examiners, Department of Labor and Industry (Messrs. Scott, Fox & Walsh, attorneys).
Mr. Theodore A. Winard, Assistant Attorney General, argued the causes for respondent (Mr. George F. Kugler, Jr., Attorney General, attorney).
PER CURIAM.
The above-entitled appeals were argued at the same time. Since most of the questions involved and the arguments for reversal are substantially similar in all eight cases, this opinion will deal with all of them.
*34 The appellants are State employees who appeal from the salaries allocated to their job titles by the Civil Service Commission (hereafter Commission). The steps that led up to the appeals, beginning with the hiring of the management consultant firm of Edward Hay and Associates, are summarized in In re Senior Appeals Examiners, 60 N.J. 356, 358-360 (1972), and need not be repeated here. However, it is necessary to add some details as to what happened between the hearings before the Hay appeals panels and the final action of the Commission fixing the salaries.
It appears from the record (as supplemented on November 15, 1972 by our order) that the procedure was as follows. After receiving the "information supplied by the appellant" (60 N.J. supra, at 360) the panel sent a questionnaire to the Division of Classification, State Services (hereafter Classification) and the Division of Research and Planning (hereafter Research) of the Department of Civil Service, designed to elicit the information which the regulations adopted by the Commission governing the appeal procedures stated was to be obtained from Classification and Research and was to be considered by the panels (60 N.J. supra, at 360). After these questionnaires were answered by Classification and Research, the panel met and decided upon its recommendation. The recommendation was made in writing on forms prepared by the Commission for that purpose, and indicated whether all three members of the panel agreed. If there was a dissent by one of the three, the reasons for the dissent were given. The panels made no findings of fact, although sometimes they gave reasons for their recommendations. The recommendations were then delivered to the Civil Service Commission, together with the transcripts of the hearings.
On March 23, 1971 a meeting was held at which there were present Mr. William Druz, Deputy Chief Examiner and Secretary of the Department of Civil Service (hereafter Deputy Chief); Mr. John Cornell, Director of the Division of Classification; Mr. Ralph Shaw, Director of the Division *35 of Research and Planning, and Mr. Robert DeNicholas, Mr. Willard Thompson, and Mrs. Marilyn Riley, the three employees of the Department of Civil Service who served on the appeals panels. No stenographic record was made or minutes kept of that meeting. The supplemental appendix describes what happened at that meeting:
At the meeting of March 23, 1971 the recommendations [of the appeal panels] were submitted * * *. The disputed titles were discussed at the meeting of March 23, 1971 as follows: When the three members of a Hay Appeals Board had made a unanimous recommendation to either deny, uphold or modify a salary range change and the Directors of the Divisions of Classification and Research and Planning concurred in that recommendation, the Deputy Chief Examiner and Secretary approved the recommendation as submitted. The same procedure was followed when the vote in favor of a recommendation was 4 to 1, i.e., one dissenting opinion from either a member of the Hay Appeals Board or one of the above mentioned Divisions. When the vote on the proposed recommendation was 3 to 2 and two of the Civil Service staff members were in the minority, there was prolonged discussion concerning the title and the merits of the appeal. The Deputy Chief Examiner and Secretary considered all of the recommendations in favor and against the proposed action and stated his recommendation for resolution of the appeal. * * *
[In the Matter of State College Librarians (A-2187-70) was not taken up at that meeting. See Point III infra.]
The Deputy Chief's recommendations to resolve such 3-2 appeals was reduced to writing and submitted to the Commission at its meeting of March 30, 1971, together with the following:
The respective recommendations of the Hay Appeals Boards and the Divisions of Classification and Research and Planning were prepared for submission to the Civil Service Commission by the Civil Service representatives on the Hay Appeals Boards. The respective appeals were segregated in the following five categories: a) unanimous recommendations of the Hay Appeals Boards and the respective Divisions of Classification and Research and Planning to uphold or change the salary range assigned to the title in question; b) a 4 to 1 vote in favor of sustaining or changing the assigned salary range; c) a 3 to 2 majority recommendation to sustain or change the assigned range; d) a 3-2 majority recommendation to sustain or change the assigned range (two professional Civil Service staff members *36 in the minority) with the recommendation of the Deputy Chief Examiner noted; and e) recommendations concerning classification problems to be resolved by the Division of Classification rather than a salary range problem to be resolved through the Hay Appeals Board procedure. The recommendations of the panels and the Divisions were submitted to the Civil Service Commission. * * * There were no other writings or recommendations presented to the Civil Service Commission, other than a summary reference sheet described infra.
The proceedings at the meeting of the Civil Service Commission on March 30, 1971 are described as follows:
A stenographic record was not made of the proceedings of the Civil Service Commission on March 30, 1971. The [panel] recommendations were submitted * * *. The Civil Service Hay Appeals Board Representatives prepared a reference sheet on all disputed titles for each Civil Service Commissioner in attendance at the meeting. The sheet contained information regarding the department of State government, title, pre-Hay range, range as of June 27, 1970 and the recommended range as established by the meeting of March 23, 1971. The presentation was made by the Civil Service Hay Appeals Board Representative familiar with the disputed title. In some instances appeals were resolved by the Civil Service Commission after a review of the summary reference sheet referred to above and the recommendations [of the panels and Classification and Research] and, in some instances, an additional oral summary was presented by the Hay Appeals Board Representative to the Commission and a colloquy ensued between the Civil Service Commission and the Hay Appeals Board Representative regarding the merits of the appeal. [The records of the Civil Service Commission do not indicate] * * * the precise manner in which the present eight cases were presented to the Civil Service Commission.
The major contentions common to the appeals are (a) the Commission had no right to "sub-delegate its responsibility to the Hay Appeals Board"; (b) the members of the Civil Service Commission did not read the testimony presented before the panels; (c) neither the panels nor the Commission made findings of fact; and (d) the opinions and recommendations of Classification and Research were accepted and relied upon by the panels, the Deputy Chief and the Commission without giving appellants an opportunity to challenge them.
*37 No appellant charges bias, prejudice or improper influence of any kind, but each claims that it was arbitrary and an abuse of discretion for the Commission not to allot a higher salary to his position.
We find no merit in the contention that it was improper to have the panels conduct the hearings and make recommendations. In the case of In re Senior Appeals Examiners, supra, 60 N.J. at 370, the court said, "Subject to any controlling statutory restrictions * * * the Commission undoubtedly had broad power to mold its procedures in conformity with due process principles." We find no statutory provision which forbade the Commission to establish the appeals panels, and we hold that the procedure established did conform to due process principles.
The keystone of appellants' remaining due process arguments is that when the Commission fixed the salaries of the appellants it was exercising quasi-judicial power, and therefore the appellants were entitled to all of the rights possessed by a litigant in a contested case presented for adjudication to an administrative agency. The Commission answers that what it did was not adjudicative but quasi-legislative and that the hearings before the appeals panels were merely informative and advisory, as they would be considered if they were held before a legislative committee; and when the Commission adopted the salary schedules, it was merely implementing the governing legislation (N.J.S.A. 11:8-1, 2; N.J.S.A. 52:14-17.50; L. 1970, c. 96, p. 474), as the Legislature had directed it to do. The Commission contends that the hearings before the appeals panels were no different than hearings before an administrative agency or a member thereof with reference to the adoption of proposed rules, at which hearing affected members of the public are invited to present their views. Appellants reply that the adoption of the schedules may have been legislative, but their challenge of the portions of the schedules that affect them created a justiciable issue and a "contested case," and the decision of that *38 issue constituted adjudication which entitled them to all of the rights of a litigant.
N.J.S.A. 11:8-1 and 2 have been in force at least since 1930. They provide (N.J.S.A. 11:8-1):
The chief examiner and secretary shall, after consultation with appointing authorities and their principal assistants, report to the commission, not later than October fifteenth of each year, compensation schedules for each class of positions in the classified service together with his recommendations, based upon experience in recruiting various positions and upon such data as he may obtain relating to rates of pay for comparable service in commercial and industrial establishments, as to the need for changes in the compensation schedules for a class or group of classes. He shall also report other matters deemed pertinent in developing and administering a compensation plan for such service, taking proper account of prevailing market rates, costs and standards of living, the state's employment policies, finances and needs.
N.J.S.A. 11:8-2 sets forth:
The compensation schedules mentioned in section 11:8-1 of this title, together with any amendments and modifications as may be made as provided in this subtitle, when approved by the commission, shall, for the ensuing fiscal year period beginning July first, except as to any modification by legislative action, constitute the compensation plan for classes of positions in the classified service.
The preparation and adoption of salary schedules under these sections seem to us to be clearly legislative. These sections do not require consultation with the employees, or that an opportunity be afforded them to be heard before adoption. The Commission could have given the employees a hearing at any time since 1930 but, had the Commission done so, it would not have altered the legislative nature of the Commission's function in adopting the schedules.
Neither L. 1968, c. 304, N.J.S.A. 52:14-17.50, nor L. 1970 c. 96, p. 474 (which appropriated 30 million dollars to be used to implement the Hay report "insofar as practicable"), contain anything which affected the legislative nature of the Commission's function in adopting salary schedules. *39 Neither statute provided for hearings, and the fact that the Commission did provide for the employees to voice their opinions, orally or in writing, did not change the essentially legislative nature of the Commission's function. Bayonne v. Division of Tax Appeals, 49 N.J. Super. 230, 240 (App. Div. 1958); New Jersey Mfrs. Cas. Ins. Co. v. Holderman, 54 N.J. Super. 260, 266 (App. Div. 1959).
Does the fact that these appellants challenge the salaries allotted to their positions make them litigants in a contested case, with all that that entails, and the decision of the Commission an adjudication? In support of the contention that it does, appellants rely on Carls v. Civil Service Comm'n, 17 N.J. 215 (1955), but we do not think that the case supports their position. That portion of the Carls opinion which spoke of the decision of the Commission in that case as "quasi-judicial" related to the question whether the appeal should have been taken under R.R. 3:81-8 or R.R. 3:81-10 (now combined in R. 2:2-3), but Justice Jacobs made it clear that he did not consider the distinction between quasi-judicial or quasi-legislative of any importance beyond settling the question as to which rule to follow. He pointed out that "the line betwen rule making and adjudication is often shadowy," and even though the appellants in Carls proceeded under the wrong rule, the merits should be decided. (See also New Jersey Mfrs. Cas. Ins. Co. v. Holderman, supra, 54 N.J. Super. at 268.) The balance of the opinion dealt with the merits and did not turn upon whether the action of the Commission was legislative or judicial. None of the questions raised here as to the absence of findings, the reading of the testimony, etc., was involved. Furthermore, in Carls the court dealt not with a comprehensive plan covering thousands of employees, but with a limited change in classification affecting a specified few.
In the cases at bar no one was reduced in salary; the objections are that the raises were not high enough. The regulations governing the appeals stated that the hearings would not be adversary and, in fact, there was no cross-examination, *40 introduction of evidence contrary to that submitted by the employees, or any of the other things characteristic of a contested case. If these be contested cases, then any one who appears before an administrative agency opposing contemplated rules can claim the rejection of his position to be adjudication.
As Professor Davis has pointed out, and as Justice Jacobs indicated in Carls, supra, it has proved impossible to precisely define when an administrative agency is acting legislatively and when judicially, and the definitions which have been attempted are of little use in deciding concrete cases. As he stated in 1 Administrative Law Treatise, § 5.01, at 285-286:
But precise definition in the abstract is not necesarily desirable, for the same function may well be regarded as rule making for one purpose or in one context and as something else for some other purpose or in another context. Here as elsewhere throughout the law a proper classification requires that both the purpose and the effect of the particular classification be taken into account. For practical law making, definitions must draw from special circumstances accompanying particular problems. * * *
Often the best solution of the problem of classifying borderline activities is to avoid classifying them  to skip the labelling and to proceed directly to the problem at hand. * * *
Proceeding "directly to the problem at hand" we hold that in the case at bar there was no need for findings of fact by the appeals panels or by the Commission. Consolidation Coal Co. v. Kandle, 105 N.J. Super. 104 (App. Div. 1969), aff'd 54 N.J. 11 (1969); Wilson v. Long Branch, 27 N.J. 360 (1958), cert. den. 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104 (1958).
Appellants argue that, even assuming it was proper to have appeals panels to hear the employees, it was improper for the Commission to delegate to those present at the March 23, 1971 meeting, described above, the task of reviewing and considering the recommendations of the appeals panels. Furthermore, they argue, assuming that the delegation was not improper, it was improper to receive from the Deputy *41 Chief, as a result of that meeting, his recommendations as to the disposition of the appeals, particularly when the appellants were not advised of the recommendations of the Deputy Chief or given an opportunity to challenge them.
We disagree. N.J.S.A. 11:8-1 requires the "Chief Examiner and Secretary" to "report to the Commission * * * compensation schedules * * *." We know of no reason why the Deputy Chief Examiner could not so report in this case. The Commission, of course, could accept, modify or reject those recommendations. Nor do we perceive any impropriety in the Deputy Chief's conferring with those present at the March 23 meeting. From the very begining it was known that Classification and Research were to be consulted, to avoid "ripple" effects. Obviously, it was important to have internal consistency in the schedules. The two divisions had given their opinions in each case to the appeals panel hearing it; it was proper for the Deputy Chief to discuss with the Directors of those divisions the bases of their opinions. The three Civil Service Hay Appeals representatives were there to report on each of the appeals, and that, too, was proper.
It was not necessary for those present at the March 23 meeting or for the members of the Commission to read the testimony. It was enough that it was available, Fifth St. Pier Corporation v. Hoboken, 22 N.J. 326, 331, 333-334 (1956); In re Shelton College, 109 N.J. Super. 488 (App. Div. 1970); 2 Davis, Administrative Law Treatise, §§ 11.03, 11.04 at 44-56, and there is nothing to indicate that the substance of the pertinent considerations was not submitted to the Deputy Chief and to the Commission. As Judge Conford said in Bayonne v. Division of Tax Appeals, supra, 49 N.J. Super. at 241: "Practical exigencies may justify an administrative practice in the course of a quasi-legislative function, notwithstanding possible occasional weaknesses, if generally fair and geared toward the accomplishment of the legislative objective on the basis of reasonable probabilities." See also 2 Davis, Administrative Law Treatise, § 11.07 at 65.
*42 The procedures followed in the cases at bar constituted what Professor Davis calls an "institutional decision." Davis 2 Administrative Law Treatise, c. 11 at 36. We hold that, under the facts of these cases, those procedures were reasonable and gave the appellants due process.

II
The next question is whether the Commission acted reasonably substantively. The burden is upon the appellants to show that "the Commission acted arbitrarily or in abuse of its discretion." This appellants have failed to do. Their arguments add up to no more than that upon the evidence adduced at the hearings their jobs should have been assigned higher salaries. But that is not enough to prove that the determination was arbitrary or an abuse of discretion. As the court said in Flanagan v. Civil Service Department, 29 N.J. 1, 148 A.2d 14 (1959):
* * * "courts should let administrative boards and officers work out their problems with as little judicial interference as possible. They may decide a particular question wrong  but it is their question. [They are] vested with a high discretion, and its abuse must appear very clearly before the courts will interfere." * * * [at 12]
We have studied the arguments advanced in each case to demonstrate arbitrariness or abuse of discretion, and the underlying evidence. In no case do we find arbitrariness or abuse of discretion.

III
Appellants In the Matter of State College Librarians (A-2187-70) additionally argue that "The Civil Service Commission had no jurisdiction to extinguish the appellant librarians faculty rights." They contend the salary scheduled did affect or extinguish those rights. The Commission answers, and we agree, "that the faculty status of an individual college employee and any attendant rights thereto are conferred *43 by the boards of trustees within the general policies and guidelines set by the Board of Higher Education. N.J.S.A. 18A:64-6(c) and (g). In reclassifying these state college librarians the Civil Service Commission did not thereby affect the right of the boards of trustees to control the faculty status and rights of the librarians and any attendant rights thereto."
The recommendations of the Hay Appeals Board with reference to this case (A-2187-70) were presented to the Commission at its meeting of June 3, 1971. All three members of the panel agreed that the salary range for Librarian I remain the same, but the panel split on Librarians II and III, the majority voting to keep those also the same while the representative of the Department of Higher Education recommended that they be increased two ranges. The recommendations were made in a long statement which detailed the reasons pro and con for the votes on salary and discussed other points (which the panel properly felt did not involve salary) about which the librarians were concerned and which the panel wrote "should be brought to the Commission's attention." The minutes recite that "Mr. Willard Thompson and Mr. Robert DeNicholas appeared before the Commission and presented a summation of the Appeals Board recommendations," and a "memorandum dated June 2, 1971," which is also part of the record. The Commission approved the panel's recommendations "as submitted." We find nothing improper in this procedure.

IV
All of the appellants in Micai et al. v. Civil Service Commission (A-1888-70), are employed in the Department of Transportation. Effective October 16, 1972 there was a reorganization of that department and an accordant change in the salary schedules which satisfies the appellants. However, all parties agree that this does not render the appeal moot *44 because, as the Commission says, "The effective date of the Hay Compensation Plan was June 27, 1970. The issue of retroactive pay * * * is still a matter before the Court."
Since we find for the Commission in Micai, no retroactive pay will be due.

V
There will be judgment for the Commission in each of the above entitled cases. No costs.