No. 1-96-0899

AMERICAN FEDERATION OF STATE, ) APPEAL FROM THE
COUNTY AND MUNICIPAL EMPLOYEES, ) CIRCUIT COURT OF
COUNCIL 31, AFL-CIO, RUSSELL ) COOK COUNTY
LADSON, ADELE TRASS, DANY )
ST. PREAX, )
 )
 Plaintiffs-Appellees, )
 )
 v. ) No. 94 CH 11503
 )
THE DEPARTMENT OF CENTRAL )
MANAGEMENT SERVICES, MICHAEL S. )
SCHWARTZ, Director of Central )
Management Services, THE CIVIL )
SERVICE COMMISSION, ) THE HONORABLE
 ) LESTER D. FOREMAN
 Defendants-Appellants. ) JUDGE PRESIDING.

 PRESIDING JUSTICE COUSINS delivered the opinion of the 

court:

 Plaintiffs, a labor organization and three State of Illinois
employees, filed a complaint against the Department of Central
Management Services (CMS), its Director, and the Illinois Civil
Service Commission for administrative review from the Illinois
Civil Service Commission (the Commission). The complaint was
based on the Commission's approval of revisions to the job
classification plan that created the "Public Service
Administrator" classification (PSA). The PSA classification
replaced approximately 240 other job classifications. The trial
court dismissed the labor organization from the suit with
prejudice and later issued a writ of certiorari in favor of the
individual plaintiffs. The court ordered the defendants to
reinstate the plaintiffs to the classifications they had been
assigned to prior to the revision of the plan. On appeal,
defendants contend that: (1) the Commission's approval of the
classification plan was not subject to review by writ of
certiorari; and (2) assuming arguendo that the Commission's
decision was reviewable using a writ of certiorari, the
Commission's approval of the revision was not arbitrary or
capricious.
BACKGROUND
 In September 1993, the Governor's Human Resources Advisory
Council (the Council) issued its final report entitled
"Recommendations for Change in Illinois." One of the Council's
recommendations was that the number of classifications of state
jobs subject to the provisions of the Illinois Personnel Code
(the Code)(20 ILCS 415/1 et seq. (West 1992)) be "dramatically
reduced." The Council stated that, in the past, a classification
was defined with such "excruciating detail that it could also
serve as the actual job description" and that such detailed type
of system had resulted in 1,679 job classifications.
 In the Council's opinion, career development would be
expanded by the new broad-banded classification system because it
would encourage extended career opportunities for workers who may
have been locked into one or two agency specific series and
locked out of very similar jobs in other agencies. The Council
also noted that the change would encourage state agencies to
update job descriptions as a routine measure in the work place,
thus eliminating the "cumbersome and difficult" requirement of
having to obtain the approval of the Civil Service Commission for
authorization of a position classification change.
 In August 1994, the Illinois Department of Central
Management Services published a notice in the Illinois Register
of the proposed amendment to the position classification pay
plan. The proposed amendment revised the heading of section
310.495 of the rules in the Administrative Code from "Senior
Public Service Administrator Class Series" to "Public Service
Administrator Series." 80 Ill. Adm. Code 310.495 (1994).
 The notice of proposed amendment stated that the new series
would include the following classifications: "Public Service
Administrator" (PSA); "Senior PSA, Level I"; and "Senior PSA,
Level II." The notice also stated that the new PSA class would
replace most job titles assigned to the merit compensation system
salary ranges of MC-08 to MC-11 and would be assigned the salary
range of $28,680 to $59,500. The proposed amendment provided
that any incumbent in the MC-08 to MC-11 salary range prior to
classification in the PSA class would be placed into the range
with no change in salary. Also, the proposed amendment provided
that salary increases of between 5% and 10% may be given to those
in the PSA class who were assigned additional responsibilities.
 On November 15, 1994, Stephen Schnorf, former director of
CMS, approved a change in the classification plan to add the PSA
classification. The classification plan review report that was
compiled by CMS stated that the new classification applied to
certain managerial supervisory or confidential state employees
whose positions were at the salary ranges MC-08 through MC-11.
Employees whose positions were affected by the new PSA class
would move into the class at their existing salaries.
 The report stated that the PSA class was "created in order
to consolidate a large number of senior management
classifications to result in a more effective classification
system." The report also stated that the narrowly defined
classes that previously were used restricted management's ability
to assign duties and functions to positions. According to the
report, the "establishment of the Public Service Administrator
class is consistent with a broad banding approach to
classification and will enable management flexibility in the
assignment of duties and creation of positions."
 Common to all PSA positions is the management nature of the
work. PSA positions are "full line supervisors" or administrators
who assist higher level managers. Other PSA positions may act in
a confidential labor relations capacity. The PSA class
encompasses those jobs where the scope of the operation and
associated administrative and managerial duties is not as great
as that of the Senior PSA, but where work performed is higher
than that of first level management positions. 
 The minimal requirements for the PSA class include the
knowledge, skill, and mental development equivalent to the
completion of four years of college, preferably with courses in
business or public administration, and prior experience
equivalent to three years of progressively responsible
administrative experience in a public or business organization.
Specific requirements vary by position option and relate to the
specific position's duties and responsibilities. 
 On November 17, 1994, the Illinois Civil Service Commission 
held a special meeting to determine whether to approve the
creation of the PSA classification, as required by the Personnel
Code. 20 ILCS 415/8a (West 1992). Gilbert Feldman, attorney for
the American Federation of State, County and Municipal Employees,
Council 31, ALC-CIO (AFSCME), attended the meeting and voiced his
opinion that the PSA class did not comply with section 8a(1) of
the Personnel Code, which requires that a classification plan be 
"based upon similarity of duties performed, responsibilities
assigned, and conditions of employment so that the same schedule
of pay may be equitably applied to all positions in the same
class." 20 ILCS 415/8a(1)(West 1992). Mr. Feldman stated his
opinion that the reclassification would encompass job titles so
disparate that they rationally could not be placed in the same
classification.
 Mike Murphy responded on behalf of CMS at the Commission's
open meeting by stating that the commonality in the class
consists of the supervisory responsibility of each employee.
Murphy also stated that the decision to create the PSA class was
in response to the Human Resource Advisory Committee's suggestion
that the number of classifications be reduced. Murphy said that
the PSA class would create a career ladder for employees.
 At the special meeting, the Commission unanimously approved
the PSA class specification and abolished approximately 240
classifications. On November 17, 1994, Bruce J. Finne, Executive
Director of the Commission, sent a letter to Feldman notifying
him of the Commission's decision.
 After the Commission approved the PSA class, CMS sent
letters to state employees affected by the change. A letter sent
by Julie L. Moscardelli in CMS's bureau of personnel management
stated that the change would make the classification plan more
understandable and the system more "'user friendly.'" The letter
also stated that the new position title includes a broadened pay
range and may enhance career opportunities. The letter also
delineated eight option designations for the new class: (1)
general administration/business/marketing/labor/personnel; (2)
fiscal management/accounting/budget/internal auditing
insurance/financial; (3) management information systems/data
processing/telecommunications; (4) physical 
sciences/environmental; (5) agriculture/conservation; (6) health
and human services; (7) law enforcement/correctional/public
safety/inspection and compliance; and (8) special license
(attorney, pharmacist, registered engineer, etc.).
 On December 22, 1994, the plaintiffs, AFSCME, and three
state employees, Russell Ladson, Adele Trass, and Dany St. Preax,
filed a complaint for administrative review, naming CMS, Director
Schnorf, and the Commission as defendants. The complaint stated
that AFSCME is the certified bargaining representative of many
civil service state employees and that it was the petitioner in
pending representation case proceedings before the Illinois State
Labor Relations Board involving state employees who were in
classifications abolished and now in the PSA class. The complaint
also said that the individual plaintiffs were in classifications
that had been abolished by and replaced by the PSA class. AFSCME
was identified as a "participating party" before the Commission.
 The plaintiffs claimed that the Commission's approval of the
new PSA class was contrary to law because the class fails to
comport with the statutory standard specified under section 8a(1)
of the Personnel Code. 20 ILCS 415/8a(1)(West 1992). The
plaintiffs also alleged that the Commission's approval of the PSA
class was contrary to the manifest weight of the evidence and
adversely impacted them. The plaintiffs asked the circuit court
to reverse the Commission's decision.
 The defendants filed a motion to dismiss the complaint with
prejudice based on a lack of subject matter jurisdiction. The
defendants argued that the Commission's approval of the position
classification was not an administrative decision subject to
review under the Administrative Review Law (735 ILCS 5/3-101 et
seq. (West 1992)) and that the plaintiffs did not have the right
to seek review of the Commission's decision. In a memorandum
filed in support of their motion, the defendants stated that
neither AFSCME nor the individual plaintiffs had shown how they
were aggrieved by the Commission's approval of the PSA
classification. Additionally, the defendants argued that the
individual plaintiffs were not parties to the administrative
proceedings.
 On March 24, 1995, the circuit court ordered that the
plaintiffs' complaint for administrative review be stricken and
allowed the plaintiffs 28 days to file an amended complaint. 
On March 28, 1995, the plaintiffs filed a first amended complaint
for administrative review and for a writ of prohibition. In count
I, which sought review under the Administrative Review Law (735
ILCS 5/3-101 et seq. (West 1992)), the plaintiffs alleged that
AFSCME "was a participating party at [the Commission] hearing on
behalf of itself and the State employees under the pay plan
represented by AFSCME." The individual plaintiffs alleged that
the Commission's decision deprived them of their "basic civil
service rights under the Personnel Code which the aforesaid
statutory standard was designed to protect." The individual
plaintiffs did not identify which job classifications they had
prior to the revision of the plan and did not state for which
agency or agencies they worked.
 AFSCME alleged that it was deprived of its "derivative
interest as legal representative of the individual Plaintiffs and
other State employees similarly situated." AFSCME also claimed
that the Commission's decision would have an adverse impact on it
in pending representation proceedings before the Illinois State
Labor Relations Board. In count II of the first amended
complaint, the plaintiffs asked the court to issue a writ of
prohibition to prevent the Commission from abolishing the
classifications and replacing them with the PSA class.
 The defendants filed a motion to dismiss the first amended
complaint, alleging that the court lacked subject matter
jurisdiction under the Administrative Review Law and that the
plaintiffs failed to state a claim upon which relief could be
granted regarding the writ of prohibition.
 On August 4, 1995, the court dismissed count I of the first
amended complaint with prejudice, ordered count II stricken, and
allowed the plaintiffs 28 days to file an amended complaint. At a
hearing on the motion to dismiss, the court found that the
plaintiffs lacked standing to bring an administrative review
action. The court also stated that "AFSCME is out as far as I am
concerned. So I want you to plead a cause of action by way of a
writ of prohibition" as to the individual plaintiffs.
 On August 16, 1995, the plaintiffs filed a second amended
complaint for a writ of prohibition, writ of certiorari, and
declaratory and injunctive relief. The complaint noted that the
prior administrative review count had been dismissed by the
court. In addition to reiterating the claim for the writ of
prohibition, the individual plaintiffs asked the court to review
the action of the Commission pursuant to a writ of certiorari, to
determine that such action was contrary to law, and to quash the
action and proceedings of the Commission. The plaintiffs also
asked the court to declare that the Commission acted in violation
of its statutory authority, to declare that the CMS's
administration of the Personnel Code was illegal, and to enjoin
the defendants from implementing the action of the Commission.
 The defendants filed a motion to dismiss pursuant to section
2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West
1992)), claiming that counts II and IV for a writ of prohibition
and for declaratory relief and injunction, respectively, should
be dismissed for failure to state claims upon which the requested
relief may be granted and that count III for writ of certiorari
should be dismissed for lack of jurisdiction. 
 After a hearing held on December 4, 1995, the circuit court
denied the defendants' motion to dismiss, ordered the
Commission's previously filed record to stand as the defendants'
answer to count III of the second amended complaint relating to
the writ of certiorari, and stayed counts II and IV of the second
amended complaint. Thereafter, the parties filed briefs in
support of their positions as to count II.
 At a hearing on February 7, 1996, the circuit court stated
that it understood the state's attempt to simplify matters in
terms of the classification plan, but wondered how employees
would be able to advance competitively with only one broad job
classification. The court noted that the plaintiffs had asserted
that they had been deprived of their "right to advancement in
career service" and that the defendants claimed that the
plaintiffs were not entitled to a writ of certiorari because they
had not shown that they had been injured by the creation of the
PSA class. The court stated that it was going to "attribute an
injury to the plaintiffs as a consequence of this change because
"I think it does, in fact, deprive them of their right to career
service under some form of merit approval." The court also stated
that it did not see how the new class was based on a similarity
in the types of employment because many of the abolished classes
"have no coordination one with the other *** and many of these
are totally different one from another."
 While the court ordered that the writ of certiorari should
issue, the court made clear that it was ruling only in favor of
the three plaintiffs because "[t]his was not a class action." The
court said that it was ordering the defendants "to reinstate
these people to the positions that they had previously been [in].
I'm asking them to reinstate these categories of MC-8, MC-9, MC-
10, and MC-11."
 Counsel for the plaintiffs stated that he would voluntarily
dismiss the remaining counts of the second amended complaint. The
court's order states that a writ of certiorari will issue in
favor of the individual plaintiffs, that counts II and IV are
voluntarily dismissed without prejudice, and that "this is a
final and appealable order." The court granted the defendants'
oral motion for stay of the court's ruling, pending defendant's
appeal, stating that "[t]his is a case that the Appellate Court
must decide."
 For the reasons which follow, we quash the writ of
certiorari and its proceedings.
ANALYSIS
 I
 Defendants first contend that the Commission's approval of
CMS's proposed change in the classification plan was not subject
to review by a writ of certiorari. Plaintiffs initially argue
that this argument is waived because defendants failed to raise
this issue before the trial court. It is true that issues raised
for the first time on appeal may not normally be considered by a
reviewing court. People ex rel. Daley v. Datacom Systems Corp.,
146 Ill. 2d 1, 27, 585 N.E.2d 51 (1991). However, this rule is
not rigid and inflexible. Hebb v. Beegle, 135 Ill. App. 3d 157,
481 N.E.2d 846 (1985). The question in the case sub judice is
one of law and has been fully briefed and argued by the parties. 
People ex rel. Daley, 146 Ill. 2d at 27. Furthermore, the waiver
rule is an admonition to litigants, not a limitation upon the
jurisdiction of the reviewing court. As such, we recognize that
the responsibility of a reviewing court for a just result and for
the maintenance of a sound and uniform body of precedent may
sometimes override the considerations of waiver that stem from
the adversarial nature of our system. American Federation of
State, County, & Municipal Employees Council 3 v. County of Cook,
145 Ill. 2d 475, 480, 584 N.E.2d 116 (1991). We believe that the
instant case presents such an occasion.
 The common law writ of certiorari was developed to provide a
means whereby a petitioner who was without avenue of appeal or
direct review could obtain limited review over an action by a
court or other tribunal exercising quasi-judicial functions. 
Stratton v. Wenona Community Unit District No. 1, 133 Ill. 2d
413, 427, 551 N.E.2d 640 (1990). Where the Administrative Review
Law has not been expressly adopted, the writ of certiorari serves
as an available method of reviewing the actions of agencies and
tribunals exercising administrative functions. Stratton, 133
Ill. 2d at 427; Hanrahan v. Williams, 174 Ill. 2d 268, 272, 673
N.E.2d 251 (1996). The purpose of the writ is to have the entire
record of the inferior tribunal brought before the court to
determine, from the record alone, that the inferior tribunal
proceeded according to the applicable law. Stratton, 133 Ill. 2d
at 427; Tanner v. Court of Claims, 256 Ill. App. 3d 1089, 1092,
629 N.E.2d 696 (1994). "If the circuit court, on the return of
the writ, finds from the record that the inferior tribunal
proceeded according to law, the writ is quashed; however, if the
proceedings are not in compliance with the law, the judgment and
proceedings shown by the return will be quashed." Tanner, 256
Ill. App. 3d at 1091.
 However, there is no absolute right to review by certiorari. 
The issuance of a writ of certiorari is within the sound
discretion of the trial court. Tanner, 256 Ill. App. 3d at 1092. 
A writ is properly denied if, as a matter of law, the court is
able to determine plaintiff cannot prevail or he is not entitled
to the review he seeks. Tanner, 256 Ill. App. 3d at 1092. 
Furthermore, the writ should not issue where it would operate
inequitably or unjustly, or in the absence of substantial injury
or injustice to the petitioner. Stratton, 133 Ill. 2d at 428. 
 Defendants argue that the Commission's approval of the
reclassification plan was a quasi-legislative action and,
therefore, not subject to review by a writ of certiorari. The
plaintiffs argue that the instant case is reviewable by writ
because the Commission's powers and decision in the instant case
were quasi-judicial.
 The United States Supreme Court has stated there is "a
recognized distinction in administrative law between proceedings
for the purpose of promulgating policy-type rules or standards,
on the one hand, and proceedings designed to adjudicate disputed
facts in particular cases on the other." United States v.
Florida East Coast Ry. Co., 410 U.S. 224, 245, 35 L. Ed. 2d 223,
239, 93 S. Ct. 810, 821 (1973). Quasi-judicial hearings concern
agency decisions that affect a small number of persons on
individual grounds based on a particular set of disputed facts
that were adjudicated. On the other hand, quasi-legislative
actions involve general facts affecting everyone. No individual
rights are at stake in a quasi-legislative proceeding. See
Advanced Systems, Inc. v. Johnson, 126 Ill. 2d 484, 506-07, 535
N.E.2d 797 (1989).
 For example, in People ex rel. Narczewski v. Bureau County
Merit Comm'n, 154 Ill. App. 3d 732, 506 N.E.2d 402 (1987), the
merit commission sought to hold a public meeting to review a
written reprimand issued by a sheriff to his deputy. The court
held that this action was quasi-judicial. Narczewski, 154 Ill.
App. 3d at 735. Also, in People ex rel. Olin Corp. v. Department
of Labor, 95 Ill. App. 3d 1108, 420 N.E.2d 1043 (1981), the court
held that the Department of Labor's action was quasi-judicial in
nature where the Director of the Department sought to hold a
meeting to determine whether union employees received proper
notice of a hearing regarding the eligibility of unemployment
benefits. The court stated that a determination of the existence
of proper notice requires an interpretation of "[t]he most
fundamental requirement of the constitutional guarantee contained
in the due process clause." Olin Corp., 95 Ill. App. 3d at 1110.
 Conversely, in Advanced, our supreme court held that the
Department of Revenue's determination of the tax multiplier is a
legislative function and the required multiplier hearing was
intended to be an information-gathering forum in pursuit of
legislative facts. As such, the court noted that the nature of
the required hearing was similar to a rule-making or
informational proceeding that affected all taxpayers in the city. 
The court stated that no individual rights were at stake at the
multiplier hearing. Advanced, 126 Ill. 2d at 507. See also, 
Tyska v. Board of Education of Township High School District 214,
117 Ill. App. 3d 917, 927, 453 N.E.2d 1344 (1983)(where court
held that the board's decision to close school and reassign
students was tantamount to the quasi-legislative power to make
prospective regulations and orders and involved a public policy
question concerning the school system and district as a whole,
and not an adversarial adjudication of the rights of the
individual).
 In the instant case, because the Commission is an
administrative agency created by the legislature, it has quasi-
legislative as well as quasi-judicial powers. See Granite City
Division of National Steel Co. v. Illinois Pollution Control
Board, 155 Ill. 2d 149, 161, 613 N.E.2d 719 (1993). Here, the
legislature has granted the Commission explicit authority to
approve, maintain, prepare and revise the classification plan (20
ILCS 415/8a(1), 10(4)(West 1992)) and to approve personnel rules
and amendments to the rules submitted to it by the Director of
CMS (20 ILCS 415/10(3)(West 1992)). The Commission also has the
authority to hear and determine written charges seeking the
discharge, demotion, or suspension of employees (20 ILCS
415/10(6)(West 1992)) and to hear appeals of employees who do not
accept the allocation of their position under the position
classification plan (20 ILCS 415/10(5)(West 1992)).
 As stated earlier, plaintiffs argue that the Commission
acted in a quasi-judicial manner when it approved the revision of
the position classification plan because the plan deprived them
of the right to future promotions. We disagree. Although the
Commission has quasi-judicial powers, the Commission's required
approval of the reclassification plan was a quasi-legislative
function. The nature of the hearing on the reclassification plan
was similar to rulemaking. Although the legislature allows the
Commission to hear appeals of employees who do not accept the
allocation of their positions, the view of individuals presented
at the hearing in the instant case was allowed to provide
information to the Commission. No facts or individual rights
were adjudicated at the hearing. In fact, the plaintiffs'
classifications at the hearing were not revealed and there is no
evidence in the record of the plaintiffs' classifications prior
to or after the Commission approved the reclassification plan. 
There is also no evidence in the record as to what affect, if
any, the reclassification plan had on the plaintiffs. In
particular, the record does not reflect whether some or all of
the plaintiffs, prior to the reclassification, were in category
MC-8, MC-9, MC-10, or MC-11. Additionally, we hold that, because
the Commission's approval of the reclassification plan was a
quasi-legislative action, the hearing was not subject to review
by a writ of certiorari.
 II
 Plaintiffs further argue that, assuming arguendo the
Commission's decision was quasi-legislative, the Commission acted
in an arbitrary and capricious manner. When an administrative
agency such as the Commission exercises its rule-making powers,
it is performing a quasi-legislative (as opposed to a quasi-
judicial) function, and, therefore, it has no burden to support
its conclusions with a given quantum of evidence. Illinois State
Chamber of Commerce v. Pollution Control Board, 177 Ill. App. 3d
923, 928, 532 N.E.2d 987 (1988). This fundamental principle
explains the discrepancy in the standards of judicial review of
each type of proceeding; that is, when dealing with an
adjudicatory proceeding, a reviewing court may only set aside the
agency decision if it is clearly against the manifest weight of
the evidence. When reviewing administrative rules and
regulations, on the other hand, a court may not invalidate the
regulation unless it is clearly arbitrary, unreasonable or
capricious. Shell Oil Co. v. Pollution Control Board, 37 Ill.
App. 3d 264, 270-71, 346 N.E.2d 212 (1976). As a reviewing
court, we must employ this standard of review because
administrative agencies are inherently more qualified to decide
technical problems and the mechanics of dealing with them. 
Illinois State Chamber of Commerce, 177 Ill. App. 3d at 928. 
Because the courts lack the expertise possessed by administrative
agencies, they should hesitate to find a regulation unreasonable. 
Shell Oil, 37 Ill. App. 3d at 271.
 Specifically, plaintiffs assert that the Commission has
failed to comply with the statutory requirements in approving the
reclassification plan. Section 8a(1) of the Personnel Code
states that the revision of the classification plan must be
consistent with the Code's standard that positions in a
classification must have similarity of duties performed,
responsibilities assigned, and conditions of employment so that
the same schedule of pay may be equitably applied to all
positions of the same class. 20 ILCS 415/8a(1)(West 1992). 
Plaintiffs argue that the reclassification is in contravention to
the Code's standards and the system of merit employment.
 We recognize that a fundamental purpose of a civil service
system is to remove employment from the patronage system. Glenn
v. City of Chicago, 256 Ill. App. 3d 825, 628 N.E.2d 844 (1993). 
Instead, it seeks to offer the employee the inducement of
promotion for conscientious, faithful, honest, and efficient
service. Glenn, 256 Ill. App. 3d at 833. "The evils, sought to
be remedied by legislation of this character, are well known and
well understood. These evils are such as grow out of what is
generally called 'the spoils system' ***. [And, they] *** have
been fitly characterized as inefficiency, extravagance *** and
political assessments." People ex rel. Akin v. Kipley, 171 Ill.
44, 58-59, 49 N.E. 229 (1897). However, the need to protect
employees against layoffs and demotions made solely on the basis
of political patronage must be balanced against the corresponding
need of that administration to implement measures designed to
save costs and promote greater efficiency in government
administration. Glenn, 256 Ill. App. 3d at 833. Therefore, an
administration may reclassify employees, or even abolish
positions and lay off workers, if such steps are taken in good
faith to promote greater economy and efficiency. Glenn, 256 Ill.
App. 3d at 833. This policy allowing reclassification recognizes
that an administration should not be unduly hampered in the
performance of its managerial responsibilities. Glenn, 256 Ill.
App. 3d at 834.
 Plaintiffs concede that the Commission is empowered under
the statute to change plaintiffs' classifications. However,
plaintiffs contend that the action taken was not in conformity
with the terms of the statute. However, plaintiffs' contention
is not convincing. Defendants have cited cases from other
jurisdictions that are more instructive. In Heyne v. Mabrey, 178
Ind. App. 610, 383 N.E.2d 464 (1978), the Indiana Court of
Appeals held that plaintiffs were not injured by 
reclassification where the plaintiffs' salaries had not been
reduced nor had their duties changed. In addition, the Indiana
court held that the plaintiffs did not have any "property rights"
in the possibility of step increases in pay because the step
increase is a mere expectancy which falls short of a legitimate
claim of entitlement. Heyne, 178 Ind. App. at 613, 383 N.E.2d at
467.
 Defendants also cite Carls v. Civil Service Comm'n, 17 N.J.
215, 111 A.2d 45 (1954). In Carls, the New Jersey Supreme Court
held that the reclassification of employees was neither arbitrary
nor capricious where neither the plaintiffs' duties nor their
salaries changed. The court also held that the plaintiffs did
not have a vested right in their former classifications because
they were, at all times, subject to the broad reclassification
powers that had been delegated by the legislature to the
Commission. Carls, 17 N.J. at 223, 111 A.2d at 49.
 Defendants further cite Schultz v. Regents of the University
of California, 160 Cal. App. 3d 768, 206 Cal. Rptr. 910 (1984). 
In Schultz, the court held that the plaintiff did not have a
protectible property interest where his salary was frozen after
reclassification until the salaries of others in the new class
rose to equal his salary. The court concluded that plaintiff's
expectation of a step increase was not supported by any promises
or "mutually explicit understandings" between him and the
University regarding the step increase and that plaintiff had
nothing more than a "unilateral expectation" that he would
receive an increase in salary. Schultz, 160 Cal. App. 3d at 777-
78, 206 Cal. Rptr. at 915-16.
 We also believe Glenn v. City of Chicago, 256 Ill. App. 3d
825, 628 N.E.2d 844 (1993), is apposite. In Glenn, the
plaintiffs, a class of current and former career service
employees of the City of Chicago, challenged the validity of the
city's personnel rule that reclassified their positions, that
reduced their salaries and eliminated their accrued seniority. 
The plaintiffs contended that the reclassification system was
invalid because it did not protect the seniority and salary of
the reclassified job holder. The court held that the rule in
question did not provide for the right to seniority, but only
provided for the right to reclassify to further efficiency and
economy in government. The court noted that seniority and the
values of career service were not synonymous, and to require that
seniority and wages be protected in the event of reclassification
would greatly dilute and undercut the economic and administrative
reform that would warrant good-faith classification in the first
instance. Glenn, 256 Ill. App. 3d at 835.
 In the case sub judice, we are mindful that the trial court
stated: "And I do attribute an injury to the plaintiffs as a
consequence of this change because I think it does, in fact,
deprive them of their right to career service under some form of
merit approval. And I don't see how that merit approval is in
any way systematically capable of being administered under a
system where everybody regardless of what their particular job
description is all get put into one category." However, in our
view, this statement by the trial court has no factual support in
the record. Rather, we agree with the defendants that the
plaintiffs have failed to articulate how application of the new
pay grade adversely affects them, especially considering that all
employees entered the PSA classification at the same salary they
had prior to the change, all employees moved into a salary range
with at least as great a maximum salary as their previous range,
and that most employees realized an increased maximum range with
the change. Based on the record, we cannot say that the
reclassification was arbitrary or capricious.
 Accordingly, the writ of certiorari and its proceedings are
quashed.
 Writ quashed.