232 N.J. Super. 358 (1989)
556 A.2d 1328
STATE OF NEW JERSEY, PLAINTIFF,
v.
MARION G. LEARY, DEFENDANT.
Superior Court of New Jersey, Law Division Burlington County.
Decided February 21, 1989.
*360 Lauren Damiano for plaintiff (Stephen G. Raymond, Prosecutor of Burlington County, attorney).
David A. Gies for defendant (Charles J. Casale, Jr., attorney).
HAINES, A.J.S.C.
This opinion holds that the Intoxicated Driver Resource Centers ("IDRCs") have no valid rules of procedure and, consequently, persons convicted of driving while intoxicated ("DWI") cannot be sentenced to participate in IDRC programs. Such sentences deny due process.
Marion G. Leary was convicted of DWI and, among other things, sentenced to serve two consecutive days at an IDRC. After completing the two-day program, he was informed that 16 more weeks of outpatient counselling were required of him. He complied with this requirement but, at the last session, was told he was intoxicated and would be required to submit to further treatment. Shortly thereafter, the IDRC issued a "Noncompliance Report" stating that Leary "did not comply with treatment planned." Comments in the report were as follows:
1. Mr. Leary was released unsuccessfully from treatment after arriving intoxicated.

*361 2. Mr. Leary describes an abusive history of alcohol consumption.
3. Client is in denial of his alcoholism.
Recommendations: Rehab. [sic]
A letter to the Mansfield Township Municipal Court from the Community Guidance Center of Mercer County, to which Leary had been sent for his 16-week counselling program, enclosed a "client treatment release" form. This was signed by a certified alcohol counselor who recommended inpatient treatment for Leary because he had not successfully completed his outpatient treatment. The letter to the court stated that Leary had failed to keep two appointments to discuss the recommendation, had refused inpatient treatment and had not been "seen or heard from" since the date of the refusal.
Leary appeared in the municipal court in response to the noncompliance report. He was represented by counsel. The State, in order to prove noncompliance, presented the Director of the Mercer County IDRC as its only witness. She admitted that she had not seen Leary and then said:
And what we do is we keep a record of every interaction. So that's what I have access to right now. And that's what I'm reporting from as well as my own interactions with Margo Engel who was the Administrator at the time. Mr. Leary did complete  did come to our classes, was referred on for a 16-week group. The report back from the group was that he, in fact on two occasions, alcohol was smelled on his breath, that ...
Defense counsel objected, saying:
Your Honor, my problem is that Miss Hart is merely a report writer. I don't even know if she had custody of the records that she is reading from. She has never met my client. She has no independent knowledge of the events that have transpired.
The court then said:
Counsellor, I don't mean to cut you short but this is a contempt hearing. If you feel that your client is not in contempt, we'll simply continue the matter and bring in the parties who were involved.
Defense counsel then said:
In that event, your Honor, could I ask for a stay of the suspension of his driving license, suspension due to that?
The court refused to continue the matter and said:
Mr. Leary, it is your duty to attend the program. You will attend the program as devised by the Intoxicated Driver Resource Center. And in order to ensure *362 that, I am going to impose a sentence of 60 days in the Burlington County Jail. That will be suspended on the condition that you attend the program as directed. That's simply an amendment of the original sentence.
No evidence except the quoted, interrupted testimony of Patricia Hart was received by the court prior to making its final disposition. A colloquy concerning restoration of defendant's driver's license took place after the sentence was imposed. In response, the court simply provided the informal assurance that "they will restore his license on compliance."
On appeal to this court, defendant argued that: (1) the State had failed to sustain its burden of proof, and (2) defendant had been denied due process because the IDRC had no published rules nor standards of review, and therefore, acted arbitrarily and capriciously. These contentions must be sustained.

A. The State's Proofs.

The State's proofs in support of the charge of noncompliance were totally inadequate. Perhaps, the records to which the only witness referred could have been introduced into evidence as business records, but no effort was made to introduce them. The State's witness had no personal information about Leary and his supposed noncompliance. She relied, in part, upon her own "interactions" with a former administrator, but that administrator was not the person who reported Leary's failure to complete treatment successfully. He was given no opportunity to cross examine and no opportunity to testify. For these reasons alone, the noncompliance charge against Leary should have been dismissed at the end of the State's case.
The municipal court judge correctly observed that this was a contempt hearing. Consequently, the hearing should not have been conducted by him but by another judge. In Re: Ruth M. Buehrer, 50 N.J. 501, 515 (1967).
It should be noted, although the argument was not made on appeal, that the 60-day suspended sentence imposed by the *363 judge was itself improper. N.J.S.A. 39:4-50(b) requires the following:
The sentencing court [at the time the original sentence is imposed] shall inform the person convicted that failure to satisfy ... [IDRC] requirements shall result in a mandatory two-day term of imprisonment in a county jail and a driver license revocation or suspension and continuation of revocation or suspension until such requirements are satisfied....
Leary was informed of the two-day jail sentence at the time of the original sentence. The municipal court, had the State sustained its burden of proof, was required to impose a two-day jail sentence upon Leary. It could impose no other.

B. The Statute.

N.J.S.A. 39:4-50 provides that a person having a ten percent blood alcohol concentration while operating a motor vehicle shall be subject:
(a)(1) For the first offense, to a fine of not less than $250.00 nor more than $400.00 and a period of detainment of not less than 12 hours nor more than 48 hours spent during two consecutive days of not less than six hours each day and served as prescribed by the program requirements of the Intoxicated Driver Resource Centers established under Section (f) of this section and, in the discretion of the court, a term of imprisonment of not more than 30 days and shall forthwith forfeit his right to operate a motor vehicle over the highways of this State for a period of not less than six months nor more than one year.
It also provides:
(b) A person convicted under this section must satisfy the screening, evaluation, referral, program and fee requirements of the Division of Alcoholism's Intoxicated Driving Programs Unit, and of the Intoxicated Driver Resource Centers and a program of alcohol education and highway safety, as prescribed by the Director of the Division of Motor Vehicles. The sentencing court shall inform the person convicted that failure to satisfy such requirements shall result in a mandatory two day term of imprisonment in a county jail and a driver license revocation or suspension and continuation of revocation or suspension until such requirements are satisfied, unless stayed by court order in accordance with Rule 7:8-2 of the N.J. Court Rules, 1969, or R.S. 39:5-22. Upon sentencing, the court shall forward to the Bureau of Alcohol Countermeasures within the Intoxicated Driving Programs Unit a copy of a person's conviction record. A fee of $80.00 shall be payable to the Alcohol Education, Rehabilitation and Enforcement Fund established pursuant to section 3, P.L. 1983, c. 531 (C. 26:2B-32) to support the Intoxicated Driving Programs Unit.
....
(f) The counties, in cooperation with the Division of Alcoholism and the Division of Motor Vehicles, but subject to the approval of the Division of Alcoholism, *364 shall designate and establish on a county or regional basis Intoxicated Drivers Resource Centers. These centers shall have the capability of serving as community treatment referral centers and as court monitors of a person's compliance with the ordered treatment, service alternative or community service. All centers established pursuant to this subsection shall be administered by a certified alcoholism counsellor or other professional with a minimum of five years' experience in treatment of alcoholism. All centers shall be required to develop individualized treatment plans for all persons attending the centers; provided that the duration of any ordered treatment or referral shall not exceed one year. It shall be the center's responsibility to establish networks with the community alcohol education, treatment and rehabilitation resources and to receive monthly reports from the referral agencies regarding a person's participation and compliance with the program. Nothing in this subsection shall bar these centers from developing their own education and treatment programs; provided that they are approved by the Division of Alcoholism.
Upon a person's failure to report to the initial screening or any subsequent ordered referral, the Intoxicated Driver Resource Center shall promptly notify the sentencing court of the person's failure to comply.
Required detention periods at the Intoxicated Driver Resource Center shall be determined according to the individual treatment classification assigned by the Bureau of Alcohol Countermeasures. Upon attendance at an Intoxicated Driver Resource Center, a person shall be assessed a per diem fee of $50.00 for the first offender program or a per diem fee of $75.00 for the second offender program, as appropriate.
The centers shall conduct a program of alcohol education and highway safety, as prescribed by the Director of the Division of Motor Vehicles.
The Director of the Division of Motor Vehicles shall adopt rules and regulations pursuant to the "Administrative Procedure Act," P.L. 1968, c. 410 (C.52:14B-1 et seq.), in order to effectuate the purposes of this subsection.

C. Rules and Regulations.

The New Jersey Department of Health deals with drunk driving responsibilities through its Division of Alcoholism. The Bureau of Alcohol Countermeasures, previously within the Department of Motor Vehicles, was transferred from that department to the Department of Health, pursuant to the requirements of N.J.S.A. 52:14D. The Intoxicated Driving Program Unit is the administrative unit of the IDRCs serviced by the Bureau of Alcohol Countermeasures.
N.J.S.A. 39:4-50 requires "the Director of the Division of Motor Vehicles ... [to] adopt rules and regulations pursuant to the `Administrative Procedure Act,' P.L. 1968, c. 410 (C. *365 52:14B-1 et seq.), in order to effectuate the purposes of this subsection." The transfer of responsibilities from the Division of Motor Vehicles to Department of Health required the latter to adopt required rules and regulations.

(1) The IDRC Procedures.
Convicted DWI offenders are given two notices setting forth the consequences of their conviction. One, signed by Leary in this case, contains IDRC information. It states:
Defendant must satisfy screening, evaluation, educational or treatment referral, and program requirements of the Bureau of Alcohol Countermeasures and Intoxicated Driver Resource Center. Defendant's failure to attend the I.D.R.C. when notified or failure to satisfy any of the above requirements shall result in license suspension until such requirements are met and 2 days imprisonment in county jail.
Leary also signed a certification at the bottom of the same form which said:
I understand the consequences of failure to meet the requirements of the above-referenced program. I further certify the above-described Defendant information is correct and acknowledge receipt of a copy of and understand this ORDER.
After conviction, Leary reported to an IDRC which apparently operated without any legally enforceable rules and procedures.
IDRCs are expensive. N.J.S.A. 39:4-50(b) requires a convicted DWI defendant to pay a fee of $80 "to the Alcohol Education, Rehabilitation and Enforcement Fund ... to support the Intoxicated Driving Program's Unit." A first offender attending an IDRC is assessed a per diem fee of $50, a second offender, $75. Leary's outpatient counselling sessions presumably were at his expense. The recommended inpatient treatment would have imposed additional costs. Restoration of a suspended license involves a $30 charge.

(2) The Administrative Procedure Act.
The Administrative Procedure Act, N.J.S.A. 52:14B-1 et seq., provides for the adoption of rules by state agencies. A "state agency" is defined in N.J.S.A. 52:14B-2(a) as:

*366 Each of the principle departments in the executive branch of the State Government, and all boards, divisions, commissions, agencies, departments, councils, authorities, offices or officers within any such departments now existing or hereafter established and authorized by statute to make, adopt or promulgate rules or adjudicate contested cases, except the office of Governor.
The Department of Health and its divisions, agencies and departments are therefore subject to the act.
N.J.S.A. 52:14B-4(d) provides:
No rule hereafter adopted is valid unless adopted in substantial compliance with this act.
A "rule" is defined in N.J.S.A. 52:14B-2(e) to mean "each agency statement of general applicability and continuing effect that implements or interprets law or policy, or describes the organization, procedure or practice requirements of any agency." The rules contained in the IDRC policy manual clearly fall within this definition and were required to comply with the Administrative Procedure Act, as N.J.S.A. 39:4-50, the statute creating the IDRCs, expressly provides.
This conclusion is reinforced by the Appellate Division's opinion in Bd. of Ed. of City of Plainfield v. Cooperman, 209 N.J. Super. 174 (App.Div. 1986), in which the court said:
Where the subject matter of an agency determination concerns matters that transcend those of individual litigants and involves matters of general administrative policy, rule making procedures should be invoked. [at 204]
See also Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 331 (1984), in which the Supreme Court set forth an analysis of rule-making requirements.
N.J.S.A. 52:14B-4 provides for advance notice of the proposed adoption of rules and for filing with the Senate and the General Assembly. Public notice must be published in the New Jersey Register. Interested persons are to be given an opportunity to submit "data, views, or arguments, orally or in writing." Hearings are required under certain circumstances. No notice of the proposed adoption of any IDRC rules was ever published.
N.J.S.A. 52:14B-7 requires publication of the New Jersey Register, a monthly bulletin, which is to set forth "(1) the text *367 of all rules filed during the preceding month, and (2) such notices as shall have been submitted pursuant to this act." Under certain circumstances, not applicable here, a publication of the rule may be omitted from the register, but an abbreviated notice is still required. The Director of the Office of Administrative Law is obliged to "compile, index, and publish a publication to be known as the `New Jersey Administrative Code' containing all effective rules adopted by each Agency." The IDRC rules do not appear in the New Jersey Administrative Code.
Not only does N.J.S.A. 52:14B-4(d) deny the validity of any rule which has not been adopted in substantial compliance with the Administrative Procedure Act, but N.J.S.A. 52:14B-5(b) also provides that no rule "shall be effective unless it has been deemed to be approved by the Legislature...."
N.J.S.A. 52:14B-4(d) states:
A proceeding to contest any rule on the ground of noncompliance with the procedural requirements of this act shall be commenced within 1 year from the effective date of the rule.
This limitation is not applicable when no notice of the proposed adoption of a rule has been given and no rule has ever been published. See National Assn. of Metal Finishers v. Environmental Protection Agency, 719 F.2d 624, 638 (3 Cir.1983), cited in Bergen Pines Hosp. v. Dept. of Human Services, 96 N.J. 456, 475 (1984) (failure to comment after adequate notice and opportunity to comment). The limiting language of the statute refers to "any rule" and to "the effective date of the rule." It is intended, obviously, to restrict challenges to rules that are "on the books" but adopted without adherence to a technical procedural requirement. In the present case, the Department of Health ignored the requirements of the Administrative Procedure Act, with which it was obliged to comply by the express provisions of N.J.S.A. 39:4-50.
When an agency has failed to comply with the rule-making requirements of the Administrative Procedure Act, its rules *368 must be set aside. Bd. of Ed. of City of Plainfield, 209 N.J. Super. at 207-210 aff'd as mod. on other grounds, 105 N.J. 587 (1987).
Leary claims that the original sentence of the municipal court requiring him to participate in IDRC procedures denied due process. That claim must be sustained. In Town Tobacconist v. Kimmelman, 94 N.J. 85 (1983), our Supreme Court held:
A law is void as a matter of due process if it is so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application". Connally v. General Const. Co., 269 U.S. 385, 391 [46 S.Ct. 126, 127, 70 L.Ed. 322] (1926). [at 118]
Here, the IDRC rules were, and are, nonexistent legally. They are, therefore, more offensive to our constitutions than enactments which are only vague.
It is also apparent that Leary cannot be convicted of noncompliance with IDRC rules which, as a matter of law, did not exist.

Conclusion.
Leary's original sentence, insofar as it refers to IDRC requirements, is set aside. He is not guilty of any failure to comply with IDRC rules.