226 N.J. Super. 17 (1988)
543 A.2d 462
IN THE MATTER OF SHERIFF'S OFFICER (PC2209J) AND SHERIFF'S OFFICER SERGEANT (PC2215J), GLOUCESTER COUNTY.
Superior Court of New Jersey, Appellate Division.
Submitted April 19, 1988.
Decided June 16, 1988.
*19 Before Judges MICHELS and GAYNOR.
Markowitz & Richman, attorneys for appellant (William T. Josem, of counsel; Joel G. Scharff, on the brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (James J. Ciancia, Assistant Attorney General, of counsel; June K. Forrest, Deputy Attorney General, on the brief).
The opinion of the court was delivered by GAYNOR, J.A.D.
In this appeal, Gloucester County Fraternal Order of Police, Lodge No. 97 (Fraternal Order) challenges the decision of the Merit System Board (Board) confirming the actions of the Department of Personnel (Department) in permitting the assignment of three correction officers to sheriff officer's duties under provisional status and in opening the sheriff's officer sergeant promotional examination to correction officers and correction officer sergeants. It is contended that this action of the Board violated the rulemaking provisions of the Administrative Procedure Act (A.P.A.), N.J.S.A. 52:14B-2, as well as the notice and hearing provisions of that act. We disagree and affirm.
Classification audits, requested by the Fraternal Order, of the duties being performed by certain Gloucester County correction officers and correction sergeants disclosed that two officers, Eric Prouze and Andre Lewis Bay, Jr., and one sergeant, John Robinson, were improperly assigned by the sheriff *20 to perform sheriff officer and sheriff officer sergeant duties in the Identification Bureau of the Sheriff's Department. Thereafter, the positions were reclassified as sheriff officer and sheriff officer sergeant positions so that the actual duties performed corresponded to the civil service designation. Under the standard procedures of the Department, the titles "sheriff's officer" and "county correction officer" are entry level positions, with individuals in each line having promotional opportunities to become sheriff's officer sergeant or correction officer sergeant, respectively. Movement from a correction officer title to a sheriff's officer title is also a promotion because of the multiple duties involved. In view of the change in the status of their titles, the three correction employees were designated as serving provisionally pending promotional examinations for the sheriff officer's positions.
The Department issued an order which memorialized the arrangement between it and the sheriff as to the reclassification, noting, with respect to the sheriff's officer sergeant examination, that the promotional procedure would be conducted on a one-time-only basis with the examination open to county correction sergeants, sheriff's officers and county correction officers with three years of permanent status. Additionally, a sheriff's officer promotional examination was announced and opened to all county correction officers with one year of permanent status.
According to the Department's operating procedure, county correction officers may compete for the entry level title of sheriff's officer. However, the Department has not established procedure for the promotion of county correction sergeants to sheriff's officer sergeants. The sergeant's examination was opened to the three title groups in order to give Robinson and others the fair and equal opportunity to compete for the position.
*21 In rejecting the Fraternal Order's appeal, the Board ruled that both examinations were correctly announced as promotional examinations and that the scope of the titles to which the examinations were opened was also correct. Specifically, the Board held that the sheriff's officer promotional examination was announced in accordance with established procedures and further that, under the circumstances, the expanded and one-time-only promotional scope of the sheriff's officer sergeant examination did not constitute an intrusion or infringement on the inchoate rights of sheriff's officers to compete for promotion. The Board found ample justification for the application of the principle that the merit system encourages competition in the testing process. However, to insure nonrecurrence, the Board required that any subsequent provisional appointment of county correction personnel to an above-entry level sheriff's officer position not be approved.
Initially, we note that a determination of the Department may not be upset in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated legislative policies expressed or implicit in the Civil Service Act. Campbell v. Dept. of Civil Serv., 39 N.J. 556, 562 (1963). Furthermore, administrative agencies have wide discretion in selecting the means to fulfill the duties that the Legislature delegated to them. Texter v. Dept. of Human Servs., 88 N.J. 376, 383-384 (1982). Agencies may act informally, or formally through rulemaking or adjudication in administrative hearings. Ibid. However, it is only when the subject matter of an agency determination concerns matters transcending those of individual litigants and involving general administrative policies that rulemaking procedures are implicated. Board of Educa., Plainfield v. Cooperman, 209 N.J. Super. 174, 204 (App.Div. 1986), mod. on other grounds 105 N.J. 587 (1987). As we learn *22 from Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313 (1984):
[A]n agency determination must be considered an administrative rule when all or most of the relevant features of administrative rules are present and preponderate in favor of the rule-making process. Such a conclusion would be warranted if it appears that the agency determination, in many or most of the following circumstances, (1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy. These relevant factors can, either singly or in combination, determine in a given case whether the essential agency action must be rendered through rule-making or adjudication. [97 N.J. at 331-332]
The criteria established in Metromedia distinguishes rule-making from "informal agency action" as well as adjudication. Woodland Private Study Group v. State, 109 N.J. 62, 68 (1987). "Informal action" is agency action which is neither adjudication nor rulemaking, and includes investigating, publicizing, planning and supervising a regulated industry. In the Matter of the Request For Solid Waste Util. Customer Lists, 106 N.J. 508, 519 (1987). A further agency determination not involving rulemaking is "intra-agency action," which is defined as a communication between agency members that does not have a substantial impact on the rights or legitimate interests of the regulated public. Woodland Private Study Group v. State, 109 N.J. at 75.
The application of these general principles to the present case compels the conclusion that the Department's written Division Operating Procedure, referred to as the "internal guidelines," constituted an intra-agency statement rather than an administrative rule requiring compliance with statutory rule-making *23 procedures. The guidelines were drawn up based upon memos sent to, and meetings between, members of the Department and the Gloucester County sheriff's office. They were neither addressed to nor communicated to the Fraternal Order. Although it is unclear what the interests of Fraternal Order are in this matter,[1] it is evident that they are not of sufficient importance to outweigh the Department's interest in flexibility and practicability in filling government positions through competitive means. We do not perceive any interest of the Fraternal Order approaching that relied upon by the Court in Woodland Private Study Group in concluding that the policy statement there contained in an administrative order implicated the procedural requirements of rulemaking. Id. at 75-76. A balancing of the Department's interest in effectively and efficiently fulfilling its function as against that of the Fraternal Order demonstrates that the procedure challenged constituted intra-agency action and not rulemaking. Id. at 75.
Appellant's argument that the internal guideline was subject to rulemaking because it conflicted with N.J.S.A. 40A:9-117.6 is without merit. This statute precludes the assignment of sheriff's officers to a penal institution for the purpose of guarding or having custody of any inmate housed therein, except under emergency conditions. The statute refers to appointments made by the county sheriffs, not the reclassification of assignments by the Department of Personnel. In any event, here, the correction officers, Prauze and Bay, were promoted to the position of sheriff's officer, rather than being sheriff's officers assigned to a county correctional institution.
Further, as the administrative determination to proceed with the promotional examination was a proper exercise of the *24 Department's discretionary authority, there was no requirement to provide Fraternal Order with the opportunity to participate in the administrative process. See Jersey City v. Babula, 56 N.J. Super. 533, 539 (App.Div. 1959). Appellant's reliance on Metromedia in this regard is misplaced as there the issue was whether or not a rule should be promulgated, not whether adjudicative or quasi-adjudicative proceedings should have been held. Metromedia, 97 N.J. at 332. The mere fact that the Department was alerted to a classification problem by the Fraternal Order does not convert the Department's action into a quasi-judicial proceeding. As the Board observed:
[W]e do not view this expanded and one-time only promotional scope as an intrusion or infringement on the inchoate rights of Sheriff's Officers to compete in the testing process. Rather, this procedure was implemented at the request of the Sheriff and to also afford Sergeant Robinson and equal opportunity to secure an appointment as a Sheriff's Officer Sergeant. It must be emphasized that Merit System principles encourage competition in the testing process and there appears ample justification for application of this principle to the circumstances of this case, subject to the limitations discussed above.
Clearly, the Department's decision as to what titles were eligible to take the examination for promotion to sheriff's officer sergeant was uniquely an administrative function and the implementation thereof was neither arbitrary, capricious nor unreasonable. See Carls v. Civil Serv. Comm'n, 17 N.J. 215, 221 (1955).
Affirmed.
NOTES
[1] The interest of appellant was not articulated in its brief. Presumably, it is the protection of its membership.