246 N.J. Super. 300 (1991)
587 A.2d 640
IN THE MATTER OF WILLIAM L. BOYAN AND ISAAC G. MCNATT, DEPARTMENT OF LABOR.
WILLIAM L. BOYAN AND ISAAC MCNATT, PLAINTIFFS-APPELLANTS,
v.
FEATHER O'CONNOR, TREASURER, STATE OF NEW JERSEY, RICHARD B. STANDIFORD, DIRECTOR, BUDGET AND ACCOUNTING, TREASURY DEPARTMENT, STATE OF NEW JERSEY AND EUGENE MCCAFFREY, COMMISSIONER, DEPARTMENT OF PERSONNEL, STATE OF NEW JERSEY, JOINTLY AND SEVERALLY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 1990.
Decided February 26, 1991.
*302 Before Judges PETRELLA, BILDER and MUIR, Jr.
Charles J. Casale, Jr. argued the cause for appellants, and on the brief and supplemental brief.
Lewis A. Scheindlin, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney; William Harla, Assistant Attorney General, of counsel; Lewis A. Scheindlin, on the brief and supplemental letter brief).
PER CURIAM.
Appellants William L. Boyan and Isaac G. McNatt are both Judges of the Division of Workers' Compensation, and as such are employees in the executive branch of State Government. They appeal from a decision of the State Treasurer, the Commissioner of Personnel, and the Director of the Division of Budget and Accounting, who collectively have undertaken to function under a recurring provision in the annual Appropriations Act as a committee which has been referred to as the "Salary Adjustment Committee" (SAC).[1] This appeal involves *303 appellants' claims to entitlement to 1987 and 1988 annual salary increments, "steps" in the salary range, as opposed to merit increases. We conclude that the statute prevails over any contrary rule or regulation.
In June 1988, Boyan and McNatt instituted an action in lieu of prerogative writs in the Law Division against the former State Treasurer, the former Director of Budget and Accounting, and the former Commissioner of the Department of Personnel seeking to compel payment of their annual salary "in salary range 39" under N.J.S.A. 34:15-49 at the appropriate step of the State Compensation Schedule, as well as money damages. Respondents asserted seven separate affirmative defenses, including failure to exhaust administrative remedies. The Law Division judge relied on R. 1:13-4(a) to transfer the complaint to SAC on November 10, 1988. SAC thereafter denied appellants' claim in a May 22, 1989 decision, reissued[2] June 7, 1989, which also incorporated a copy of SAC's July 30, 1986 decision which had involved Boyan.
The facts are not complicated. Boyan[3] and McNatt were appointed Judges of the Division of Workers' Compensation in January 1982 by the Governor, pursuant to N.J.S.A. 34:15-49. That position is considered in the unclassified service (N.J.S.A. 11A:3-4(a)), and is in the Department of Labor in the executive *304 branch of government. See N.J.S.A. 34:1A-11; N.J.S.A. 34:1A-5.1.
On December 22, 1984 Boyan and McNatt each received raises in salary to $51,314.79 per year. SAC approved salary increases in range 39 each year from 1985 through 1988, which both appellants received. McNatt's salary was increased on March 28, 1987 to $64,731 and on November 1, 1987 to $67,967.55. As of March 22, 1987, Boyan was earning $61,702.46. His salary was increased on November 1, 1987 to $65,404.61. As of the date of SAC's decision which is the subject of this appeal, Boyan was earning $70,000 per year and McNatt was earning in excess of $73,000 per year.
The compensation schedule, as adopted by the Merit System Board of the Department of Personnel and in effect on September 12, 1987, listed the minimum salary for range 39[4] as $56,639.34 at step one, with a maximum salary for that range at step nine of $79,295.82. Each step, listed as an "increment" on that compensation schedule, was $2,832.06 higher than the previous step.
Since appellants were both appointed in January 1982, as of April 1988, in the normal course, they would have progressed to the seventh step.[5] At that step, appellants would have received *305 $73,631.70. However, as noted, McNatt was paid at the rate of $67,967.55; Boyan at a rate of $65,404.61. A disparity still exists between their salaries, and Boyan questions the basis for such disparity.
In its June 17, 1989 decision SAC, relying on its own salary "rules and regulations"[6] governing employees whose salaries exceed $50,000 per year, rejected appellants' claims of entitlement to step increases. SAC also relied on the fact that in recent years its regulations have consistently provided no automatic incremental pay increases for employee salaries over $50,000. Rather, pay increases for such "employees are based on performance and require department head approval." SAC concluded that N.J.S.A. 34:15-49 does not require a different result for compensation judges, and found no basis for their entitlement to automatic step increases.
Essentially, the difference between the rate at which Boyan and McNatt are paid and the rate to which they claim entitlement, is the result of SAC's interpretation of N.J.S.A. 34:15-49 and its policy of treating executive branch salaries in excess of $50,000 differently than those below that figure. In concluding that, under its regulations, state employees in the executive branch of government, including Judges of Workers' Compensation whose salaries exceed $50,000 are not entitled to receive automatic incremental pay increases, SAC noted in its May 22, 1989 final decision:
It must be emphasized that Salary Regulations governing employees whose salaries exceed $50,000.00 have been in place for this administration and the Legislature has continued to direct that the Committee promulgate rules and *306 regulations governing rates of pay in the annual Appropriations Act. Clearly, the Legislature is aware of this longstanding process for Executive Branch employees which has continued without legislative interference. See Pringle v. Department of Civil Service, 45 N.J. 329 [212 A.2d 360] (1965). Employees whose salaries reach the $50,000.00 threshold no longer receive automatic or standard incremental pay increases. Rather, pay increases for such employees are based on performance and require department head approval. Thus, for compensation purposes, standard increment steps are no longer applicable to employees whose salaries have reached the $50,000.00 limit.
The first sentence quoted above from SAC's 1989 decision is somewhat misleading. Although employees' salaries which exceed $50,000 have been subjected to the contested regulations adopted by SAC, it is inappropriate to couple that statement with the Legislature's limited direction in the Appropriations Act to promulgate rules and regulations confined to "salary ranges and rates of pay." However, the principal issue before us is whether N.J.S.A. 34:15-49 expresses a legislative intent to treat salaries of Judges of Workers' Compensation differently from that of other executive branch state employees in salary range 39.
Appellants argue that they are entitled to the annual increment in their salary range, and that SAC did not act within its enabling legislation because its "rules and regulations" in effect, "repeal[ed] express provisions within N.J.S.A. 34:15-49." They argue that N.J.S.A. 34:15-49 requires annual increases ("steps") for Judges of Workers' Compensation since the statute states: "The salary of the judges of compensation shall be as provided in salary range 39 of the Compensation Plan...." That section goes on to state:
In establishing the applicable increment category level of the ... judges of compensation appropriate credit shall be given for years of service heretofore and hereafter as judge of compensation.... No subsequent annual increment for a judge of compensation shall be made unless the judge of compensation is evaluated favorably by the director of the division on the basis of recommendations made by the supervising judge of compensation.
*307 During various periods[7] the Legislature has included in the Appropriations Act language which authorizes designated officials to establish "rules and regulations governing salary ranges and rates of pay." The applicable statutory language for fiscal year 1988, the most recent year considered in SAC's decision, provided:
The State Treasurer, the Commissioner of Personnel, and the Director of the Division of Budget and Accounting shall establish rules and regulations governing salary ranges and rates of pay. The implementation of such rules and regulations shall be made effective at the beginning of the bi-weekly pay period nearest July 1, 1988 or thereafter as determined by such rules and regulations, with timely notification of such rules and regulations to the Joint Budget Oversight Committee or its successor. [L. 1988, c. 47, at 269].
Similar language, except for the applicable effective date, appeared in each Appropriations Act for Fiscal Years 1986 and 1987. See L. 1987, c. 154, at 252; L. 1986, c. 41, at 247.
The joint regulations adopted by the Merit System Board and SAC, pursuant to the quoted language in the Appropriations Act, deal with salaries of employees in the executive branch of state government who earn $50,000 or more. Rule SR# 8 was adopted as an amendment to the State Compensation Plan by the Merit System Board at its meeting of September 22, 1987, to govern when raises are to be given,[8] and states:
The Commissioner of the Department of Personnel and the Director, Division of Budget and Accounting, shall implement the following salary regulations for the Executive Branch of State Government for Fiscal Year 1988, which shall be applicable to employees whose class titles are assigned to Employee Relations Groupings D, M, V, W, X, Y, and Z and whose annual salaries are at or exceed $50,000 during Fiscal Year 1988.

*308 I. Increases

A. Covered employees may receive performance-based merit increases only. Employees whose annual salary on the day immediately preceding their anniversary date or last increase was at or over $50,000, may receive up to $4,000 for performance. Over $4,000, not to exceed a total increase of $6,000, for the fiscal year requires extraordinary justification. Any increase will be effective no earlier than 12 months from appointment or last increase. Those whose salaries on September 12 are at or exceed $50,000 as a result of application of general increases will fall within the provisions of this section.
SAC says that the salary regulations limit raises of executive branch employees whose salaries exceed $50,000, to performance-based increases of up to $6,000, and even as to this an increase above $4,000 requires extraordinary justification. See, e.g., Salary Regulation # 1-89 (adopted June 21, 1988), applicable to Fiscal Year 1989; adopted by the Merit System Board as an amendment to the State Compensation Plan. Employees earning below $50,000 also obtain cost-of-living increases which are provided for by adjustments in the salary ranges. Thus, for example, the first step of appellants' range 39, which was $56,639.34 effective September 12, 1987, was $53,942.23 a year earlier  a 5% difference. SAC argues that strict application of the range 39 steps would provide appellants with cost-of-living increases as well as performance increases, and in some cases this would violate the $6,000 limit and the $4,000 limit to which higher paid employees of the executive branch are limited, absent extraordinary justification. SAC points out that N.J.S.A. 34:15-49, provides by its terms that "no subsequent annual increment for a judge of compensation shall be made unless the judge of compensation is evaluated favorably by the director of the division [of Workers' Compensation]...." It argues that this demonstrates legislative direction for performance-based increase methodology in its regulations.
Appellants note that N.J.A.C. 4:2-20.3(a), repealed and recodified January 4, 1988 as N.J.A.C. 4A:6-5.3, provided that state employees shall receive increments (that is, move from one salary to the next) on their "anniversary" dates, if they receive satisfactory evaluations. However, the corresponding language *309 is not found in N.J.A.C. 4A:6-5.3. N.J.A.C. 4:2-20.3(a) states:
As provided in the State Compensation Plan and Salary Procedures, an employee shall receive an anniversary date increment unless his or her final rating was the lowest PAR [Performance Assessment Review] rating. An employee who receives the lowest PAR rating shall be denied an anniversary review.
The recodified section, N.J.A.C. 4A:6-5.3(b) provides:
An employee receiving an annual PAR rating at the lowest level shall be denied an anniversary date increment.
It thus appears that the recodified regulations have removed reference to salary increments. Nevertheless, by referring to employees being "denied an anniversary date increment," the recodified section still supports appellants' claim.
Moreover, appellants argue that the New Jersey Administrative Code only provides for salaries on step, and not in between. They maintain that this is evident from N.J.A.C. 4:1-7.1, repealed and recodified on September 6, 1988 as N.J.A.C. 4A:3-4.1. N.J.A.C. 4:1-7.1(a)(2) provided that for employment in state service:
The compensation schedule shall establish pay rates and a series of pay ranges containing minimum, maximum and intermediate salary steps. Each full-time employee in the classified service shall be paid at one of the rates in the compensation schedule for the class in which he is employed.
N.J.A.C. 4:1-7.3(a)(2) stated that for employees in state service:
The Civil Service Commission [now the Department of Personnel] shall establish regulations for normal increments. These shall be regular periodic increases within the salary range, subject to available appropriations based on a period of service and performance rating.
N.J.A.C. 4A:3-4.1(d) now provides for state service employees:
1. The compensation plan shall establish pay rates and a series of salary ranges.
2. Each employee in the career and unclassified services shall be paid within the salary range or at the pay rate assigned to the employee's job title and pay shall be adjusted in accordance with this subchapter, except as otherwise provided by law, rule or action of the Commissioner.
Appellants assert that based on N.J.A.C. 4:1-7.3, repealed and recodified as N.J.A.C. 4A:3-4.1, an "employee is entitled to *310 progress as a matter of right, if he has served an additional year and he has received a `satisfactory' performance rating." The former N.J.A.C. 4:1-7.1 applied to the classified service, and did not state that it applied to unclassified positions such as judges of compensation. The recodified N.J.A.C. 4A:3-4.1(d) specifically states that unclassified positions shall be paid within the salary range "except as otherwise provided by law, rule or action of the Commissioner [of the Department of Personnel]."
Appellants argue that the following language in SAC's regulations, promulgated each year, is contrary to the statutory provisions of N.J.S.A. 34:15-49: "covered employees may receive performance-based merit increases only." Appellants thus argue that once a compensation judge is evaluated favorably by the Director of the Division of Workers' Compensation, that compensation judge must be moved to the next higher step in range 39.[9]
Respondents contend that the Legislature has not only consistently directed that the three officers, who comprise what is referred to as SAC, determine salary adjustments for state employees, but has also provided that no salary shall be increased or salary adjustment paid to any state employee without the prior approval of these officers. For this proposition they refer us to appropriation laws adopted in 1990 and 1978 (see e.g., L. 1990, c. 43; L. 1978, c. 60). However, the language in those acts would not affect the years at issue in this appeal. In any event, there is also no indication that the general language in any Appropriations Act was ever intended to overrule or repeal the specific language of N.J.S.A. 34:15-49.
There is no other applicable legislation which presently refers to those three state employees. Prior to September 25, 1986 *311 (when the Civil Service Act, L. 1986, c. 112, replaced Title 11 with Title 11A), N.J.S.A. 11:14-17 had given specific duties by titles to three officials in the executive department (essentially the same as the present members of SAC). However, N.J.S.A. 11:14-17 dealt solely with lump sum payments of accumulated sick leave[10] to state employees upon retirement and provided with respect thereto:
The President of the Civil Service Commission, the State Treasurer and the Director of the Division of Budget and Accounting shall jointly prepare and promulgate rules and regulations to implement this act, including but not limited to the procedure for application for, and payment of, such supplemental compensation and reasonable standards for determining which State employees are eligible for the supplemental compensation payment provided herein.
Title 11, chapter 8 (referred to in N.J.S.A. 34:15-49) was repealed effective September 25, 1986, and replaced by N.J.S.A. 11A:3-7 and N.J.S.A. 11A:6-24. The Commissioner of the Department of Personnel was substituted for the Civil Service Commission. Adoption of Title 11A by L. 1986, c. 112, effective September 25, 1986, omitted those three officials named in its Title 11 predecessor. The successor section, N.J.S.A. 11A:6-23 merely said:
The board [the Merit System Board] shall adopt rules for the implementation of supplemental compensation, which shall include but need not be limited to application and eligibility procedures.
The reference to "the board" in N.J.S.A. 11A:6-23 refers to the Merit System Board, which consists of five members, one of whom is the Commissioner of Personnel, with four other members appointed by the Governor. N.J.S.A. 11A:2-1 and 11A:2-3. Thus, the three officials previously named, in now repealed N.J.S.A. 11:14-17, were omitted in the revision of the Civil Service Act, and the Merit System Board is not the equivalent of what was and is called SAC. Only the Commissioner of *312 Personnel[11] is on both the Merit System Board and SAC.
Nowhere in the authorization provisions of Title 11A is the Merit System Board, which in recent years apparently had some connection with SAC's activities, given any power or duty with respect to determining the fixing of salaries or increments. See N.J.S.A. 11A:2-6 and 11A:2-23. It is given authority to adopt rules regarding implementation of "supplemental" sick leave compensation. However, we consider supplemental benefits in its ordinary and plain meaning as just that  a supplement to compensation fixed by law, or to a negotiated contract sanctioned by law.
The Appropriations Act may contain limitations, restrictions, or conditions on the expenditures of appropriated monies, see Karcher v. Kean, 97 N.J. 483, 504-506, 479 A.2d 403 (1984). However, this is distinct from whether the Legislature intended, separately or in a series of annual Appropriations Acts to repeal provisions of Title 39.
Appellants claim that SAC erred in denying their claims for the payment of increased salaries by full steps in range 39 in accordance with N.J.S.A. 34:15-49. SAC asserts that the statute only requires compensation judges to receive salaries that fall within salary range 39, and not a particular level or step within the range, and that this has occurred for both appellants since they have received salaries within range 39, with regular salary increments after satisfactory performance evaluations. It then argues that N.J.S.A. 34:15-49 contains no requirement that compensation judges must receive "automatic cost-of-living increases." However, appellants' contend that they were denied increments (steps), and not cost-of-living increases. N.J.S.A. 34:15-49 supports appellants' arguments since it provides: "no subsequent annual increment ... shall be made unless *313 the judge of compensation is evaluated favorably by the director...." (Emphasis added).
Respondents argue that we should read the disputed language regarding SAC's authority to adopt rules and regulations in the Appropriations Act, and the language in N.J.S.A. 34:15-49 in pari materia, so that the latter statute is thereby amended to permit departure from the applicable salary range, here range 39.[12] Stated differently, SAC argues that the provision that compensation judges be paid in accordance with salary range 39 is superseded by SAC's Uniform Salary Regulations which it says it adopted purportedly under authority of the Appropriations Act.
This argument would result in a regulation being used to impliedly repeal an express statutory provision. We reject this as incongruous. That implied repealers are disfavored, Mahwah Tp. v. Bergen County Bd. of Taxation, 98 N.J. 268, 281, 486 A.2d 818 (1985); N.J. Chamber of Commerce v. N.J. Election Law Enforcement Comm., 82 N.J. 57, 82, 411 A.2d 168 (1980); Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 528-529, 197 A.2d 673 (1964), emphasizes the incongruity. See 1A Sutherland, Statutes and Statutory Construction, § 23.11 at 235 (4th ed. 1972). A statute cannot be read in pari materia if it impinges on or contradicts part of another statute and results in an implied repealer. Morris Co. Indus. Park v. Thomas Nicol Co., 35 N.J. 522, 526-527, 173 A.2d 414 (1961); Fried v. Kervick, 34 N.J. 68, 70-71, 167 A.2d 380 (1961). Indeed, the pari materia doctrine is generally invoked to give full force and effect to each statute. State v. Wean, 86 N.J. Super. 283, 289, 206 A.2d 765 (App.Div. 1965); Weehawken Environment Comm., Inc. v. Township of Weehawken, 161 N.J. Super. 381, 396, 391 A.2d 968 (Law Div. 1978); South Shore National Bank v. Donner, 104 N.J. Super. 169, 173, 249 A.2d 25 (Law Div. 1969); 2A Sutherland, Statutory Construction, *314 § 51.03 (4th ed. 1984 Rev.). Moreover, the words in the statute must be considered in the context of the entire section and in a manner which gives them a common sense meaning which advances the legislative purpose. See Cressey v. Campus Chefs, Div. of CVI Service, Inc., 204 N.J. Super. 337, 342-343, 498 A.2d 1274 (App.Div. 1985).
The salaries of Judges of Workers' Compensation are governed by N.J.S.A. 34:15-49 which states in pertinent part:
... the salary of the judges of compensation shall be as provided in salary range 39 of the Compensation Plan adopted by the Civil Service Commission in accordance with Title 11, chapter 8 of the Revised Statutes of New Jersey. In addition to his salary, a judge of compensation regularly assigned as a supervising judge of compensation by the director shall receive additional compensation of $1,500.00 per annum during the period of such assignment. In establishing the applicable increment category level of the director and the judges of compensation appropriate credit shall be given for years of service heretofore and hereafter as judge of compensation, supervising judge of compensation, chief judge of compensation, director of the division or referee of formal hearings. No subsequent annual increment for a judge of compensation shall be made unless the judge of compensation is evaluated favorably by the director of the division on the basis of recommendations made by the supervising judge of compensation.
SAC's position ignores the plain language of N.J.S.A. 34:15-49. The Legislature set the Compensation Judges' salaries with considerable specificity. The Legislature is presumed conversant with adjustments to the range for cost-of-living increases. In accordance with the Appropriations Act, the Legislature's Joint Budget Oversight Committee receives copies of SAC's rules and regulations. However, N.J.S.A. 34:15-49 states that the compensation judge's salary "shall be as provided in salary range 39 of the Compensation Plan." It then expressly provided that in establishing the applicable increment, credit is given for prior service in certain designated positions and that "[n]o subsequent annual increment ... shall be made unless the judge ... is evaluated favorably." The statute not only is specific as to the range, but replete with references to increments. Although the Legislature could have *315 fixed specific increments in the statute, it did not. Rather, it relied on the increments in range 39, and it was presumably aware that they were subject to cost-of-living adjustments.
Although respondents' arguments may have some logic in the context of state employees in general in the executive branch of government, any deviation from the language of N.J.S.A. 34:15-49 regarding Judges of Workers' Compensation must be initiated by the Legislature. By its plain language N.J.S.A. 34:15-49 requires a different result than that argued for by SAC, since it contains a valid legislative determination which is binding on us as well as the executive branch of government. See Service Armament Co. v. Hyland, 70 N.J. 550, 556, 362 A.2d 13 (1976); Gangemi v. Berry, 25 N.J. 1, 10, 134 A.2d 1 (1957).
Furthermore, the legislative history of N.J.S.A. 34:15-49 indicates that the Legislature may indeed have become aware on one occasion of a problem concerning payment of salaries of Judges of Compensation according to the steps in Range 39. Assembly Bill 766 introduced in its original form in 1984 would have moved the entire salary range to the next highest number  Range 40. The Legislature amended the bill and passed it as a second official copy reprint (OCR) with the following language added by the Senate Judiciary Committee:
Salaries of the Director and the Judges of Compensation shall be paid in accordance with the Compensation Plan excluding any supplemental salary regulations.
This action by the Legislature expressed a legislative intent that Judges of Compensation be paid in accordance with the compensation plan expressly excluding any "supplemental salary regulations." This is the only legislative expression we are aware of which addresses the issue of whether salary "regulations" apply to Judges of Compensation, and it expresses a negative position.
This bill was conditionally vetoed by the Governor. One of his suggested changes would have eliminated the Senate's advice and consent power upon reappointment of Judges of the *316 Division of Workers' Compensation. The Legislature declined to adopt the Governor's recommendations which were printed in a third OCR of A766. One might speculate that the Legislature's refusal to acquiesce in the conditional veto proposed had to do with the added future of deletion of the Senate's participation in the reappointment process.
Contrary to SAC's assertion of legislative acquiescence, it is equally arguable that the Legislature, by passage of the 2d OCR of A766 of 1984 in both houses, made clear that Judges of Compensation were to be paid fully in accordance with the steps in Range 39, and not under any administrative action by way of supplemental regulation which would negate that intent. Significantly, as far as can be determined, prior to 1984 SAC exercised whatever authority it may have had under the Appropriations Act to authorize increased payments to public employees, not a curtailment of payments in a range. Various "regulations" of SAC which have been submitted to us appear to bear this out.
Moreover, the Governor's conditional veto message to A766 (2d OCR), recognized that the legislation provided that Judges of Compensation "shall receive annual salary increments and costs of living adjustments despite the existence of any supplemental salary regulations to the contrary...." The Governor expressed concurrence with that concept by not recommending changes in that language, although he recommended that the salary of Judges of Compensation not exceed 93.6% of the salary paid to Judges of the Superior Court in order to maintain the differential between salaries.
In addition to the statutory language referring to annual increments, the legislative history of the 1977 amendment to N.J.S.A. 34:15-49 further supports appellants' position. The statement accompanying the Senate Committee Amendment specifically said: "The Committee amended the bill [S 3107 of 1977] to require that a judge of compensation receive a favorable evaluation from the Director of Compensation, based on *317 recommendations of a Supervising Judge, before said judge could receive an annual increment." The use of the term "annual increment" supports a legislative intent to grant "annual increments" or steps to judges of compensation. The legislative history thus specifically addresses annual increments, whereas the annual salary regulation states: "covered employees may receive performance-based merit increases only." Thus, the annual salary regulation of SAC is contrary to the legislative intent of N.J.S.A. 34:15-49 which allows annual increments when the judge of compensation receives a favorable evaluation. Hence, the regulation must fall as to appellants. The ordinary and primary meaning of the term "annual increment," is that an employee shall move from one salary step to another on an annual basis. Thus, the statute mandates annual increases for judges of compensation if statutory requirements of N.J.S.A. 34:15-49 are fulfilled.
The statutory history does not support SAC's position. We conclude that the rules adopted each year by SAC violate N.J.S.A. 34:15-49 with respect to Judges of Workers' Compensation. The position of Judge of Workers' Compensation, and that of the Director of the Division of Workers' Compensation, are given specific salary ranges by statute. Accordingly, N.J.S.A. 34:15-49, properly interpreted, requires that step increases apply to the salary of compensation judges.
Examination of N.J.S.A. 34:15-49.1 gives support to this view. This section provides:
Notwithstanding the provisions of R.S. 34:15-49 to the contrary, referees of formal hearings in the Division of Workers' Compensation who have been so employed for a period of 10 years or more and who have been attorneys at law of this State for a period of 10 years or more, are hereby designated judges of compensation and shall commence service as judges of compensation upon the effective date of this act at the first step in salary range 39 of the appropriate compensation plan adopted by the Civil Service Commission in accordance with Chapter 8 of Title 11 of the Revised Statutes.
Since N.J.S.A. 34:15-49.1 specifically mentions the first step in salary range nine, it fortifies our conclusion that all the steps of the salary range were intended by the Legislature to apply to *318 salaries of Judges of Workers' Compensation. There are other positions in the executive branch of state government where specific salaries are recited in the statutes instead of a salary range. Examples are the salaries of the Governor and cabinet officers. N.J.S.A. 52:14-15.104 and N.J.S.A. 52:14-15.107. If the Legislature wanted to set a specific salary amount for judges of compensation, it could have readily done so.
SAC's argument that we should apply the rule of due deference to the agency where there is long usage and practical interpretation by the agency charged with implementing a statute, see, e.g., Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 312 A.2d 497 (1973), is not persuasive here. Administrative regulations generally carry a presumption of validity, and the party contesting them has the burden of proving their invalidity. New Jersey Guild of Hearing Aids Dispensers v. Long, 75 N.J. 544, 561, 384 A.2d 795 (1978). Nevertheless, administrative regulations are not binding on the courts and a disputed regulation will not be upheld if a court determines that it is inconsistent with the statute it purports to interpret. Smith v. Director, Division of Taxation, 108 N.J. 19, 26, 527 A.2d 843 (1987). Moreover, it is also well recognized that absent specific legislative intent to the contrary, words in a statute are to be given their ordinary and primary meaning. Julius Roehrs Co. v. Division of Tax Appeals, 16 N.J. 493, 497, 109 A.2d 611 (1954).
We are satisfied that appellants have met their burden of establishing the invalidity of the challenged salary regulations as applied to them. We are unable to conclude that the terms of the annual Appropriations Act in any way authorize infringement on the specific provisions of the statute governing the pay to be provided to judges of compensation.
We conclude that under the express requirements of N.J.S.A. 34:15-49 as enacted by the Legislature, neither SAC nor any other department or agency of the State can effectively change the statute's provisions. Any change in the statutory scheme *319 relating to payment of compensation to Judges of Workers' Compensation must be made by the Legislature. The Law Division Judge should not have referred the matter for dispute resolution to SAC since the issue was purely one of statutory interpretation.
Appellants' have also raised an additional contention that SAC's regulations were not adopted in accordance with the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 et seq. However, in view of our decision we need not decide whether SAC's regulations are subject to the APA.
Reversed and remanded with direction that plaintiffs are to be paid at the appropriate step in salary range 39 based on their respective anniversary dates.
PETRELLA, P.J.A.D. concurring.
Although I concur with the opinion of the court, I am of the view that appellants are entitled to prevail on other grounds which should be addressed. The regulations of the so-called "Salary Adjustment Committee" (SAC) concededly do not comply with the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 et seq. Those regulations have been challenged on this appeal. The applicability of the APA has been briefed and is before us. Moreover, since the trial judge had transferred the dispute to SAC it is appropriate to focus on that entity and the basis for its authority.
I agree that an Appropriations Act may contain limitations, restrictions, or conditions on the expenditures of appropriated monies, see Karcher v. Kean, 97 N.J. 483, 504-506, 479 A.2d 403 (1984). The question becomes not only whether the Legislature intended, separately or in a series of annual Appropriations Acts, to repeal provisions of Title 39, but also whether it intended to repose in three designated state officials (called SAC) the authority to adopt regulations and to act not only quasi-legislatively, but perhaps quasi-judicially, without being subject to the APA and with no more permanency in state *320 government than the prospect of renewed annual existence in future Appropriations Acts. Indeed, SAC appears not only to be acting quasi-legislatively in adopting "rules and regulations," but acting "quasi-judicially" in ruling on contested matters as witnessed by this appeal.
SAC has not been allocated to any state department. Allocation to executive departments for other than temporary commissions for special purposes is the usual requirement under N.J. Const. (1947), Art. V, § IV, ¶ 1, which states:
I. All executive and administrative offices, departments, and instrumentalities of the State government, including the offices of Secretary of State and Attorney General, and their respective functions, powers and duties, shall be allocated by law among and within not more than twenty principal departments, in such manner as to group the same according to major purposes so far as practicable. Temporary commissions for special purposes may, however, be established by law and such commissions need not be allocated within a principal department.
Nothing in any legislation indicates any intent that the respondents, three individuals named in various Appropriations Acts over a number of years, with status renewed only on an annual basis, constitute a temporary commission within the meaning of the quoted constitutional provision.[1] Thus, concerns arise concerning the status and authority of SAC as well as its procedures, including whether the APA applies to regulations adopted under authority of a scant few lines in the annual Appropriations Act.
Presumably pursuant to authority in the Appropriations Act to "establish rules and regulations governing ranges and rates of pay," SAC adopted the 1987 and 1988 salary regulations which are the subject of this appeal. The regulations were adopted as "Joint Salary Regulations of the Merit System *321 Board and the Salary Adjustment Committee." The 1987 resolution (SR # 8) was expressly stated to have been adopted pursuant to L. 1987, c. 154, the 1987-1988 fiscal year Appropriations Act.
The Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 et seq., was intended to provide safeguards for parties who might be adversely affected by adoption of "administrative rules and regulations" by "State Agencies." N.J.S.A. 52:14B-4. Thus, the APA requires that prior to adoption of a rule, the agency must: (1) give at least 20 days notice (published in the New Jersey Register) of its intended action, setting out the terms and substance thereof and the manner in which interested persons may present their views; and (2) afford interested parties reasonable opportunity to comment orally or in writing; and (3) fully consider all submissions. See Rutgers Council v. New Jersey Board of Higher Education, 126 N.J. Super. 53, 61-62, 312 A.2d 677 (App.Div. 1973).
A state agency is defined in the APA as:
`State Agency' or `Agency' shall include each of the principal departments in the executive branch of the State Government, and all boards, divisions, commissions, agencies, departments, councils, authorities, offices or officers within any such departments now existing or hereafter established and authorized by statute to make, adopt or promulgate rules or adjudicate contested cases, except the Office of the Governor. [N.J.S.A. 52:14B-2(a)].
The APA also defines a rule in N.J.S.A. 52:14B-2(e) as:
`Administrative Rule' or `Rule,' when not otherwise modified, means each agency statement of general applicability and continuing effect that implements or interprets law or policy, or describes the organization, procedure or practice requirements of any agency. The term includes the amendment or repeal of any rule, but does not include: (1) statements concerning the internal management or discipline of any agency; (2) intraagency and interagency statements; and (3) agency decisions and findings in contested cases.
Respondents concede that the 1987 and 1988 regulations of SAC (some apparently adopted jointly with the Merit System *322 Board[2]), were not adopted in accordance with the APA and that there is no reference in New Jersey statutes to any "Salary Adjustment Committee". They also indicate that SAC's regulations are not given wide general circulation. The regulations are apparently adopted throughout the course of each fiscal year and respondents have advised that they "are recorded in the minutes of the pertinent meeting of the Merit System Board." The significance of the quoted language is not clear since SAC is obviously not a part of the Merit System Board or of the Department of Personnel or its predecessor. SAC also states that its
directives are sent to all State Employee Negotiating Units representatives, centralized payroll within the Department of Treasury and all state personnel offices. They are also kept on file at the Department of Personnel. In addition, pursuant to the requirements of the Appropriations Act, copies of all SAC regulations are sent to the Legislature. See, e.g., L. 1990, c. 43....
Regarding applicability of the APA to SAC, respondents say that it is a complex question. They take the position that SAC is exempt from the APA's rulemaking requirements as a result of a perceived legislative intent as well as exemptions in N.J.S.A. 52:14B-2(e)(1) and (2), for "statements concerning the internal management ... of any agency [and] intra-agency and inter-agency statements."
Respondents maintain that for the past 34 years the Legislature has constituted the three individuals[3] referred to in the Appropriations Act to establish rules and regulations governing salary ranges and rates of pay. They argue that this included "salary adjustments for Executive Branch employees," and point out that the creation of SAC substantially pre-dates *323 adoption of the APA in 1968, apparently urging some significance in this latter fact with respect to the applicability of the APA and the Legislature's intent.[4] This argument has little appeal since virtually all of the state departments and agencies predated the APA, and the APA nonetheless generally applies to them. See N.J.S.A. 52:14B-2(a). Moreover, the various State Departments have a continuing existence on what may be considered a more or less permanent basis, rather than the year-long life of SAC under each new annual Appropriations Act.
Respondents argue that reference to the establishment by SAC of "rules and regulations" should be considered "immaterial in evaluating whether SAC's statements are `rules' within the definition set forth by the APA." They argue that the phrase "rules and regulations" in the Appropriations Act does not mean that, but instead means "statements," based on an argument that a prior history of attempted involvement by the *324 Legislature directly in the process of setting salaries[5] in 1970, see L. 1970, c. 96, at page 474, ended a few years later with a requirement for notification of SAC's actions to a specified arm of the Legislature.
Whether or not the Legislature may be aware that SAC does not follow the notice and comment procedure of the APA is actually irrelevant. It presumably has received such notice of the regulations as required by the Appropriations Act. Moreover, legislative "inaction" in failing to react to SAC's actions is a "weak reed upon which to lean" and a "poor beacon" to rely on. 2A Sutherland, Statutory Construction, § 49.10 at 261 (4th ed. 1984 Rev.). See White v. North Bergen Tp., 77 N.J. 538, 545-546, 391 A.2d 911 (1978); Garden State Farms, Inc. v. Bay, 77 N.J. 439, 453, 390 A.2d 1177 (1978).
Furthermore, as noted in the majority opinion, the legislative history of N.J.S.A. 34:15-49, including the history of Assembly Bill 766 of 1984, supports the conclusion that Judges of Compensation were to be paid in accordance with the steps in Range 39, and not by virtue of any supplemental regulation or administrative action which would modify the statutory intent.
Respondents have argued that SAC serves a purpose in assisting and carrying out constitutional responsibilities of the Governor to administer government on a day-to-day basis, and supervise state employees. This argument is unpersuasive. The Departments of Treasury and Personnel, as well as the Merit System Board, and each department head all serve that function. Indeed, the Departments of the Treasury and Personnel have specific missions in that regard. There is also an Office of Employee Relations (see N.J.S.A. 34:13A-1 et seq.) assigned to the Department of Treasury which deals with salary negotiations.
*325 I would reject SAC's argument that based on legislative intent its "regulations" are exempt from rulemaking requirements of the APA. Legislative intent is not directly relevant to the question of applicability of the APA. The analysis must be whether SAC's actions violate the APA regardless of whether the Legislature might have believed or intended that the APA requirements were not necessary. Agency directives, rules and regulations have been overturned because they violate the APA, despite claims of legislative intent to the contrary. See, e.g., Petition of Paterson Counseling Ctr., 237 N.J. Super. 240, 246-249, 567 A.2d 282 (App.Div. 1989); Board of Educ. of City of Plainfield v. Cooperman, 209 N.J. Super. 174, 202-206, 507 A.2d 253 (App.Div. 1986), aff'd as modified 105 N.J. 587, 523 A.2d 655 (1987); State v. Leary, 232 N.J. Super. 358, 364-368, 556 A.2d 1328 (Law Div. 1989). It is SAC's actions that determine whether the APA must be followed.
Adoption of a State Compensation Plan, see In re Senior Appeals Examiners, 60 N.J. 356, 358, 290 A.2d 129 (1972), does not impact here. That is quite different from compliance with language in the Appropriations Act to adopt "rules and regulations." See also Abramson v. Farrell, 122 N.J. Super. 30, 34-35, 298 A.2d 705 (App.Div. 1972).
SAC's reliance on In re Senior Appeals, 60 N.J. 356, 290 A.2d 129 (1972), on remand Abramson, et al. v. Farrell, 122 N.J. Super. 30, 298 A.2d 705 (App.Div. 1972), is not apposite. Although in that case both this court and the Supreme Court discussed salary schedules, the issue of whether the APA applied was not addressed. In fact, hearings were held and the Civil Service Commission contended they "were no different than hearings before an administrative agency or a member thereof with reference to the adoption of proposed rules." 122 N.J. Super. at 37, 298 A.2d 705.
In addition, SAC argues: "[w]hatever interest the public may have in such decisions does not outweigh SAC's need for speed and flexibility." Even if the APA requirements might deprive *326 SAC of some speed and flexibility (except for emergency procedures,[6]), it would hardly be to the extent SAC contends. N.J.S.A. 52:14B-4 requires agencies to give 20 days notice of intended action, and afford interested parties reasonable opportunity to submit arguments, with the agency fully considering all submissions. No reason appears why such requirements could not be complied with in the usual case despite those time constraints. SAC's interests do not outweigh the public's interest in knowing how its tax money is spent.
Finally, SAC contends that there is no basis to consider state employees the "regulated public," because this would "effectively read the intra- and inter-agency exemptions out of the statute." It concludes: "[b]y definition, any internal agency statement affects agency employees." That may be true, but not everything that affects agency employees is necessarily an inter-agency statement. See In the Matter of Adoption of Rules Concerning Conduct of Judges of Compensation, N.J.A.C. 12:235-3.11 through 3.23, 244 N.J. Super. 683, 583 A.2d 403 (App.Div. 1990). The conceptual problem is the term "regulated public."
In Woodland Private Study Group v. State, 109 N.J. 62, 75-76, 533 A.2d 387 (1987), it was clear that the dischargers of hazardous waste were the "regulated public" ultimately responsible for cleanup and removal costs, and that those dischargers were entitled to the opportunity for notice and comment under the APA. In Woodland, parties responsible for cleanup of a hazardous waste site challenged an administrative order which limited their participation in development of remedial investigations and feasibility studies for cleanup. Id. at 63-65, 533 A.2d 387. In discussing definitions of internal management, the Supreme Court referred to the Oregon exception for "internal management directives" as covering "communications that `affect individuals solely in their capacities as members of the *327 agency involved rather than as members of the general public who may have occasion to deal with the agency.'" Id. at 73, 533 A.2d 387. SAC claims here that its statements "may also be properly characterized as communications that affect individuals solely in their capacities as State employees." The Woodland Court gave two examples of internal memoranda: one establishing office hours and another affecting organizational changes within an agency. Those examples are much more limited in their effect on the public than the instant salary regulations.
In the instant appeal, the public in general is not directly "regulated" in the same sense. Although it may be argued that the affected state employees are not the "public" in the sense meant by the term "regulated public," they are "regulated" in terms of salary decisions. However, the type of regulations challenged by appellants here do affect the public in direct terms because they create policy which involves interpretation of legislation, see Matter of Adoption of Rules, etc., supra, 244 N.J. Super. 683, 583 A.2d 403, and the use of the public's tax money.
I would reject SAC's argument, relying on Burke v. Children's Services Division, 26 Or. App. 145, 552 P.2d 592 (1976), as quoted in Woodland Private Study Group, supra, 109 N.J. at 73, 533 A.2d 387, that its regulations merely address the internal management of state government. Indeed, such an issue was not ever raised in what I consider a comparable case. Matter of Adoption of Rules, etc., supra, 244 N.J. Super. 683, 583 A.2d 403.
In Burke v. Children's Services Division, an employed mother of three children challenged a directive which terminated a program of direct child care payments under the Aid to Dependent Children Program. 552 P.2d at 593. The court ruled that the directive should have been promulgated with notice and comment under the APA. Id. at 595.
*328 However, in Woodland Private Study Group, supra, 109 N.J. at 73, 533 A.2d 387, the Court stated: "We hesitate to adopt the strict rule applied in Burke v. Children's Services Division, supra." Instead, the Court adopted the following standard: "whether the agency action has a `substantial impact' on the rights or interests of the parties." 109 N.J. at 74, 533 A.2d 387.
SAC compares statements "concerning the internal management ... of any agency," N.J.S.A. 52:14B-2(e)(1), with the Federal Administrative Procedure Act's requirement that rulemaking does not apply to "a matter relating to agency management or personnel," 5 U.S.C.A. § 553(a)(2). SAC relies on Curlott v. Campbell, 598 F.2d 1175 (9th Cir.1979), where a group of federal employees who lived in Alaska challenged the cost-of-living allowance ("COLA") rates set by the Federal Civil Service Commission without notice to the affected employees. Id. at 1177. The court held that the APA was "inapplicable because the Commission decision involves a management/personnel matter." Id. at 1180, n. 8.
On the other hand, Alaniz v. Office of Personnel Management, 728 F.2d 1460, 1462 (Fed. Cir.1984), was a class action suit by federal employees in Alaska who successfully challenged modifications within the administration of the COLA program. The court ruled that these modifications constituted rulemaking subject to the APA. Id. at 1469. It considered these modifications changes in methodology and not "routine corrections or refinements." Id. at 1467-1468. Alaniz appears more persuasive than Curlott because changes in methodology do alter operation of existing rules, and such changes constitute more than a management matter. The regulations at issue here also constituted changes in methodology when originally adopted, even if subsequent regulations each year have often taken word-for-word formulations from previous years.
The challenged regulations here do not appear to be intra-agency, inter-agency or management statements within the *329 meaning of the APA exception, they are not merely "statements," they are regulations. Metromedia, Inc. v. Director Division of Taxation, 97 N.J. 313, 331-332, 478 A.2d 742 (1984), analyzed the criteria to distinguish rule-making from "informal agency action" as well as adjudication:
... [A]n agency determination must be considered an administrative rule when all or most of the relevant features of administrative rules are present and preponderate in favor of the rule-making process. Such a conclusion would be warranted if it appears that the agency determination, in many or most of the following circumstances: (1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy. These relevant factors can, either singly or in combination, determine in a given case whether the essential agency action must be rendered through rule-making or adjudication.
See also Woodland Private Study Group v. State, supra, 109 N.J. at 68, 533 A.2d 387; Matter of Sheriff's Officer, 226 N.J. Super. 17, 22, 543 A.2d 462 (App.Div. 1988).
In summary, I would hold that SAC is an agency within the ambit of the APA.[7] Its regulations have a substantial impact for various reasons. A significant number of state employees constitute "the public"; the public in general is affected by the salaries of state employees; this type of regulation was not meant to be seen only by the Department of Personnel or the Department of the Treasury; the regulations conflict with the language of a statute, N.J.S.A. 34:15-49; and the regulations regulate more than a narrow select group and are intended to be applied generally, and in future cases. Using the balancing test, SAC's interests do not outweigh those of the public. *330 Hence, the relevant aspects of the challenged regulations come within the criteria in Metromedia, Inc. v. Dir. Div. of Taxation, supra, 97 N.J. at 331, 478 A.2d 742. Thus, the "joint salary regulations" are subject to the APA and were not properly adopted.
SAC's "rules and regulations" are in my view subject to the APA and are not exempt as intra-agency or inter-agency statements or as management directives. The "regulations" are not the type of "internal guidelines" regarding eligibility to take civil service tests or other matters purely intended to guide internal policy. See Matter of Sheriff's Officer, supra, 226 N.J. Super. 17, 543 A.2d 462. Indeed, the language of the Appropriations Acts under review does not refer to "statements" or "directives" (which can also be characterized as "rules" or "regulations"). It specifically requires by legislative fiat that "rules and regulations" be adopted.
Nothing in the Appropriations Act gives SAC any authority to do more than "establish rules and regulations governing salary ranges and rates of pay." The Legislature authorized at most a very limited quasi-legislative type delegation in the annual Appropriations Act. Nothing in the Appropriations Act or any other statute gives SAC quasi-judicial authority or jurisdiction to resolve disputes.

 EXHIBIT A
 Appropriations Act References To Adjusting
 Benefits And Adopting Regulations
 ADJUST RULES &
 BENEFITS REGULATIONS
L. 1956, c. 100, p. 435 Yes Yes
L. 1957, c. 113, p. 449 Yes Yes
L. 1958, c. 64, p. 440 Yes No
L. 1959, c. 106, p. 451 Yes No
L. 1960, c. 46, p. 384 Yes No
L. 1961, c. 38, p. 355-356 Yes No
L. 1962, c. 79, p. 520-521 Yes No
L. 1963, c. 97, p. 537-539 Yes No
L. 1964, c. 76, p. 392 Yes No
L. 1965, c. 112, p. 580-581 Yes No

*331
L. 1966, c. 33, p. 358 Yes No
L. 1967, c. 63, p. 262-263 No No
L. 1968, c. 119, p. 361-363 Yes Yes
L. 1969, c. 71, p. 218 Yes No
L. 1970, c. 96, p. 474 Yes Yes
L. 1971, c. 240, p. 1331 Yes Yes
L. 1972, c. 73, p. 381 Yes Yes
L. 1973, c. 188, p. 542 Yes Yes
L. 1974, c. 58, p. 284 Yes Yes
L. 1975, c. 128, p. 489 Yes Yes
L. 1976, c. 42, p. 222-223 Yes Yes
L. 1977, c. 137, p. 643-644 Yes Yes
L. 1978, c. 60, p. 299-300 Yes Yes
L. 1979, c. 119, p. 464-465 Yes Yes
L. 1980, c. 56, p. 348 Yes Yes
L. 1981, c. 190, p. 722 Yes Yes
L. 1982, c. 49, p. 251 Yes Yes
L. 1983, c. 240, p. 945 Yes Yes
L. 1984, c. 58, p. 373 Yes Yes
L. 1985, c. 209, p. 780 No Yes
L. 1986, c. 41, p. 289-290 No Yes
L. 1987, c. 154, p. 787 No Yes
L. 1988, c. 47, p. 348 No Yes
L. 1989, c. 122, p. 690 No Yes
L. 1990, c. 43, p. ___ No Yes

NOTES
[1] We find no reference in any statute to any entity entitled Salary Adjustment Committee. Respondents concede there is no such reference to SAC. However, the State Treasurer, Commissioner of Personnel, and the Director of the Division of Budget and Accounting have apparently adopted that name in connection with their functions under one section in the annual Appropriations Act. We refer to SAC throughout for convenience, although it is clear that this committee has no independent or permanent existence other than by virtue of being reconstituted each year under similar language in each annual Appropriations Act from which SAC derives its authority. The three officials operate under authority of language in the annual State Appropriations Act which is identical for the fiscal years at issue, i.e. 1987 and 1988. See L. 1988, c. 47, at 269; L. 1987, c. 154, at 252. See also L. 1986, c. 41, at 247; L. 1985, c. 209, at 780; L. 1984, c. 58, at 373.
[2] The May 19, 1989 decision was captioned "Final Administrative Action of the Commissioner of Personnel," and signed solely by him. A June 7, 1989 letter referred to an inadvertent error and incorrect letterhead use, and enclosed a reissued decision (the subject of this appeal) captioned "Final Administrative Action of the Salary Adjustment Committee," and signed only by the Commissioner of the Department of Personnel as the "Decision rendered by the Salary Adjustment Committee the 19th day of May 1989."
[3] Boyan was involved in a prior appeal filed on June 28, 1985 under Docket Number A-5038-84, which sought an annual increment as of December 22, 1984. The matter was remanded to SAC, which rejected his claim in a July 30, 1986 final administrative decision by the President of the then Civil Service Commission, which referred, among other things, to a "cost-of-living" increase. No appeal was taken from that decision.
[4] Range 39 was as follows:

 Range Increment Min. 2nd 3rd 4th
 1st
 39 2,832.06 56,639.34 59,471.40 62,303.46 65,135.52
 5th 6th 7th 8th 9th
 67,967.58 70,799.64 73,631.70 76,463.76 79,295.82

[5] The first eight steps require a year's service and are effective at the beginning of the bi-weekly pay period nearest to July 1. See, e.g., L. 1988, c. 47, at 269. Appellants' first complete year of service would have accrued for the July 1983 raise.
[6] SAC's rules and regulations are not published in the N.J.Register or in any publication. They are apparently kept on file at various Departments, and copies forwarded to the "Joint Budget Oversight Committee or its successor." In its supplemental letter brief addressing questions concerning SAC's status and the possible applicability of the Administrative Procedure Act, N.J.S.A. 52:14B-1 et seq., to SAC's rules and regulations, respondents argue, inter alia, that the phrase "rules and regulations" in the Appropriations Act should be construed as "directives." But see note 12, infra.
[7] See, e.g., L. 1988, c. 47, at 348; L. 1987, c. 154, at 787; L. 1986, c. 41, at 289; L. 1985, c. 209, at 780; and L. 1984, c. 58, at 373.
[8] The heading of SR# 8 states: "Joint Salary Regulations of the Merit System Board and the Salary Adjustment Committee are issued pursuant to the authority of chapter 154, P.L. 1987 for Fiscal Year 1987-88." [The annual Appropriations Act.] Essentially, the same format was used in SR# 1-89 for Fiscal Year 1989, adopted by the Merit System Board at its June 21, 1988 meeting. The heading of the latter regulation merely reads "Joint Salary Regulations of the Merit System Board and the Salary Adjustment Committee."
[9] While we do not decide the issue, we note in passing appellants' argument that the Legislature afforded compensation judges special salary treatment to insulate them from political pressures. Since the salary provision of N.J.S.A. 34:15-49 appears to be unique, this may well be the case.
[10] This section was originally adopted as Laws of 1973, chapter 130, § 9 effective July 1, 1973 and called "an act concerning supplemental compensation payments for public employees in certain cases."
[11] The title, in the former Department of Civil Service, was President of the Civil Service Commission. N.J.S.A. 11:1-1.
[12] This is somewhat inconsistent with SAC's argument that the APA does not apply to it because of its assertion that "rules and regulations" in the Appropriations Act should be interpreted to mean "statements." See note 6, supra.
[1] An agreement by the members of SAC to consider themselves within the umbrella of the Department of Personnel would not be the equivalent of being "allocated by law." That constitutional requirement means that the authorizing statute must make the allocation to the appropriate executive branch agency. See Sprissler v. Pennsylvania-Reading S.S. Lines, 45 N.J. 127, 134-135, 211 A.2d 783 (1965).
[2] The Merit System Board is within the Department of Personnel, N.J.S.A. 11A:2-1. Its powers and duties are set forth in N.J.S.A. 11A:2-6. It is given no authority in the annual Appropriations Act.
[3] Prior to establishment of the Department of Personnel the President of the Civil Service Commission was one of the members.
[4] In appropriations laws going back to at least 1956, "salary adjustments and salary increases" were at various times to be authorized by "regulations." Thus, L. 1956, c. 100, at 432-433 provided:

The President of the Civil Service Commission, the State Treasurer and the Director of the Division of Budget and Accounting in the Department of the Treasury shall prescribe such equitable rules and regulations as may be necessary to implement the provisions of this appropriation....
Similar language was in effect for 1957. No such language appears starting with L. 1958, c. 64, at p. 440 through L. 1967, c. 63, at p. 63. Starting again with L. 1968, c. 119, at page 361 and to date the annual Appropriations Acts have generally referred to rules and regulations regarding salary adjustments and for normal salary increments. Beginning with L. 1982, c. 49, at p. 251 and annually thereafter timely notification of the rules and regulations was to be given to the Subcommittee on Personnel of the Joint Appropriations Committee or the Joint Budget Oversight Committee, or its successor. Also, since at least 1956 three officials in the Executive Branch of government were designated in each annual Appropriations Act to either adopt regulations or approve salary adjustments and merit salary increments, or both. The tenor of each act was that a salary adjustment was an increase in benefits. For a compilation of the relevant citations to annual Appropriations Acts see Exhibit A attached.
[5] The Legislature's involvement in salaries was also made more attenuated by the process of collective negotiation mandated by the Public Employee Relations Act, N.J.S.A. 34:13B-1, et seq.
[6] See N.J.S.A. 52:14B-4.4.
[7] There would seem to be no dispute that the Merit System Board also meets the APA definition of an agency.